[Civ. No. 1902.   Third Appellate District.—February 17, 1919.]

## J. A. EDWARDS et al., Respondents, v. G. L. BAKER, Appellant.

BROKER'S COMMISSIONS — SALE OF REAL ESTATE — CONTRACT FOR PAYMENT CONDITIONAL.—Where a contract between a firm of real estate brokers and the owner of real estate authorizing the brokers to effect a sale of real estate for such owner expressly stipulates that the brokers should be entitled to compensation only after the payment by the purchaser of the purchase price or a specified portion thereof, or unless the purchaser has performed some other acts material or vital to the contract of purchase, the brokers cannot claim the compensation or commission until the purchaser has made the stipulated payment or performed the specified condition.

ID.—DEFAULT OF PURCHASER — SUBSEQUENT ASSIGNMENT OF CONTRACT
TO PURCHASE.—Where a contract between the owner of land and
real estate brokers for services of the latter in negotiating a sale
of the lands provided that the services should be paid for only out
of the money to be paid by the purchaser they procured "or his as-
signs," and the contract with the purchaser procured by the brokers
provided for forfeiture of all his rights under the contract, in the
event of default by him the brokers could not, under their contract,
recover from the owner, where the purchaser made default in his
payments, and thereafter assigned his contract of purchase to an
investment company, since at the time of the purported assignment
such contract had become *functus officio* and the purchaser had noth-
ing to assign.

APPEAL from a judgment of the Superior Court of Stanis-
laus County. W. H. Langdon, Judge. Reversed.

The facts are stated in the opinion of the court.

J. M. Walthall and Roy B. Maxey for Appellant.

L. J. Maddux and F. W. Reeder for Respondents.

HART, J.—The action was based upon three certain promis-
sory notes, each for the sum of $266.66, dated Modesto, Sep-
tember 27, 1910, payable, respectively, on the fifth days of
April of 1913, 1914, and 1915, executed by defendant and pay-
able to the order of plaintiffs.

It is deemed proper first to explain that the notes sued on
were given by Baker to the plaintiffs as the result of the com-
promise of a suit brought against the latter by the former,
upon a *quantum meruit,* for the reasonable value of services
performed by the plaintiffs in negotiating the sale of certain
lands for the defendant to one P. Weisendanger. The follow-
ing clause was contained in each of the first two notes de-
clared upon: "Said note to be paid only out of the money to
be paid by P. Weisendanger or his assigns for purchase price
of G. L. Baker ranch and not out of interest." The third
note contained a similar clause, with the exception that in-
stead of "G. L. Baker ranch," it referred to "Gilbert ranch."
It appeared that this was a mistake of the party who drew up
the notes, the defendant's first name being Gilbert and the in-
tention being to refer to the Baker ranch. It also appeared
that the true name of the party mentioned in the pleadings

and notes as "P. Weisendanger" was "Theodore Weisendanger," and that the letter "T," in some of the instruments herein mentioned, was so written that it might easily be taken for "P." However, no point is made on this fact.

It appears from the evidence that the plaintiffs, real estate brokers, were employed by the defendant Baker to negotiate for him the sale of certain lands embraced within a certain district or territory in Stanislaus County, known as the "Oakdale Colony," and that the plaintiffs procured a purchaser in the person of said Theodore Weisendanger, with whom the defendant entered into a written contract for the sale of said lands on the twenty-fourth day of March, 1910. Said contract provided for the sale by Baker to Weisendanger of the several parcels or tracts of land therein described for the aggregate sum of forty-eight thousand eight hundred dollars, to be paid in three substantially equal annual installments, beginning "on or before" the fifth day of April, 1913, with interest at the rate of six per cent, payable in advance. The contract provided, in part, as follows:

"First party agrees to deliver deeds to any ten (10) acre tracts any time on receiving sixty-five (65) dollars per acre, such payments to apply on the time payments falling due next in order of time. Second party to receive one-fourth of the crop of 1910, grain in sacks, hay baled both delivered at Oakdale Warehouse, and to have the benefit of the summer fallowing plowing now done. First party agrees to give T. Weisendanger possession of the ranch on August 1st, 1910. And the party of the second part agrees to pay all state and county taxes or assessments of whatsoever nature which may become due on the premises above described after June, 1910.

"In the event of a failure to comply with the terms hereof, by the party of the second part, the parties of the first part shall be released from all obligation in law or equity to convey said property, and the party of the second part shall forfeit all right thereto. And the parties of the first part, on receiving such payment, at the time and in the manner above mentioned, agree to execute and deliver to the party of the second part, or to his assigns, a good and sufficient deed."

Weisendanger took possession of the land under said contract and thereafter entered into contracts with three several parties for the sale of certain subdivisions of the lands to them. It appears that Weisendanger paid the interest on

the purchase price of the land down to the date when the first payment on the principal sum fell due, to wit, April 5, 1913. He, however, defaulted in the payment of the said first installment on the principal sum and, on the second day of May, 1913, Baker commenced an action against Weisendanger and others to quiet title to the lands described in the contract between him and Weisendanger and to have said contract declared null and void. Contemporaneously with the filing of the complaint in said action, Baker caused to be recorded in the proper office a *lis pendens.*

On the twenty-sixth day of May, 1913, Weisendanger made a purported assignment of said contract to the Conservative Investment Company of Los Angeles, a corporation. Said assignment recited that ''Theodore Weisendanger hereby sells, assigns, transfers, conveys and sets over unto the Conservative Investment Company of Los Angeles, a corporation, that certain agreement made and entered into the 24th day of March, 1910, by and between Gilbert L. Baker and Mabel Baker, his wife, and Theodore Weisendanger, together with all rights and interests of every kind and character belonging or accruing to said Theodore Weisendanger under and by virtue of said agreement, and the said Conservative Investment Company, of Los Angeles, by its acceptance of these presents, does hereby assume all of the ditches and obligations of said Theodore Weisendanger under and by virtue of said agreement,'' and the property was then described.

On the second day of June, 1913, Weisendanger interposed a demurrer to the complaint in the action brought by Baker to quiet title and to nullify the effect of the contract referred to and, on the seventeenth day of June, 1913, Baker dismissed said action, the reason for the dismissal not being shown by the record herein.

The evidence discloses that Weisendanger was at one time the owner of nine-tenths of the capital stock of the Conservative Investment Company, above mentioned, but that, after transferring or assigning to said company his contract to purchase the Baker lands, he sold all of said stock to a number of persons who had formed themselves into a syndicate for the purpose of taking over said stock and the business of said company. It appears that after said transaction the new owners of said company found, upon looking into its assets, the assignment made by Weisendanger to the company of the con-

tract for the sale to Weisendanger of the Baker lands. Mr.
Rupp, then the secretary of the Investment Company, testi-
fied that the corporation desired to buy some land in the Oak-
dale section of Stanislaus County, and upon finding that the
contract between Weisendanger and Baker had been assigned
to it, the company, through its representatives, immediately
took steps looking to the purchase of the lands involved and
described in said contract. An attorney of the company was
first sent to Oakdale to look into the proposition and he there-
after reported to the company that when Weisendanger made
the purported assignment mentioned he had nothing to assign,
his contract with Baker having been forfeited because of his
failure to pay the first installment on the purchase price of the
lands called for by the said contract. Negotiations were then
entered into with Baker by representatives of the Investment
Company for the purchase of the lands, and the same were
consummated by the execution, on June 5, 1913, of a deed by
Baker and his wife conveying substantially the same lands de-
scribed in the Weisendanger contract to the Investment Com-
pany. The latter paid Baker, on the purchase price, in June,
1913, the sum of twenty thousand four hundred dollars, and
in January, 1914, and August, 1915, the further sums of $750
and $14,750, respectively.

The court found, as to each of said notes, that defendant
made the note and delivered the same to plaintiffs, who are
the lawful owners and holders thereof; "that before the mak-
ing of said note defendant employed plaintiffs as his agents
to secure a buyer for his, defendant's lands, and that pur-
suant to such employment plaintiffs secured one P. Weisen-
danger as such buyer. That before the making and delivery
of said note P. Weisendanger contracted, by an instrument in
writing, by himself or assigns, to buy the land referred to in
said note from defendant G. L. Baker. That P. Weisendan-
ger, in said note, mentioned, sold and assigned, on or about
the twenty-sixth day of May, 1913, all his right, title and in-
terest in and to the Baker land, in said note mentioned, to
the Conservative Investment Company, a corporation, of Los
Angeles, California, and said company, since said assignment,
have paid defendant, G. L. Baker, about thirty thousand dol-
lars on the purchase price of said land mentioned in said note,
which note was given, by defendant to plaintiffs, in payment
of agent's commission for securing buyer for said land. That

all of the conditions of said note have been carried out and said note is now due and payable."

Judgment was accordingly awarded the plaintiffs in the sum of $799, and the defendant appeals from said judgment and the order denying his motion for a new trial.

The instruments sued on are not, strictly speaking, promissory notes, since they do not involve an unconditional promise to pay the amounts therein agreed to be paid. They are rather contracts for the payment of money upon a certain condition, and could become or be converted into an unconditional promise to pay only when the condition upon which it became obligatory upon the defendant to pay happened. The condition is, as seen, that payment shall be made only upon the payment on the principal of the purchase price by Weisendanger to Baker. If, therefore, the condition upon which the obligations were to be satisfied has not happened, then the plaintiff cannot recover, for it is well-settled law, that where a contract between a real estate broker and the owner of real estate authorizing the former to effect a sale of real estate for the latter contains a stipulation that the broker shall be entitled to compensation under the contract only after the payment by the purchaser of the purchase price or a certain specified portion thereof, or unless the purchaser has performed some other acts, material or vital to the contract of purchase, the broker cannot claim the compensation or commission until the purchaser has made the stipulated payment or performed the specified conditions. As is said in *Lindley* v. *Fay*, 119 Cal. 239, 243, [51 Pac. 333], a case precisely similar to this, so far as the position of the plaintiffs herein is concerned: "It [the evidence] tends to show an agreement to pay commissions out of the first money received, and no money has ever been received. Under such a contract, the broker is not entitled to compensation when he finds a purchaser ready, willing, and able to purchase on the prescribed terms. There must be a sale and a first payment to entitle him to recover. It is so nominated in the bond." (See, also, *Boysen* v. *Frink*, 80 Ark. 254, [96 S. W. 1056]; *Inge* v. *McCreery*, 60 App. Div. 557, [69 N. Y. Supp. 1052], 4 R. C. L. 331.)

As supporting his position that the rule above stated applies to the facts of this case, the appellant contends that the sale of the lands to the Conservative Investment Company involved a transaction wholly independent of and distinct from the

transaction involving the agreement of sale between him and Weisendanger—that is to say, that the purchase of the property by the Investment Company was solely by virtue of a contract between him and said company which had no relation to or connection with the Weisendanger agreement or the assignment thereof by the latter to the Investment Company, and that the purchase by it of the lands was, therefore, not as an assignee of Weisendanger. The basis of the contention is, of course, that Weisendanger, having defaulted in the payment of the first installment on the purchase price of the lands under his contract prior to the time at which he assigned his contract to the Investment Company, forfeited all his rights under said agreement and, therefore, then had nothing to assign. In further support of the contention, reliance is had on the testimony of the defendant and the witness, Rupp, the officer of the corporation, who conducted the negotiations culminating in the sale to the Investment Company, that the transaction resulting in said sale had no relation to the Weisendanger assignment and that it was not made in pursuance of the Weisendanger agreement, but independently thereof.

Much of the testimony last above referred to involves the mere opinions or legal conclusions of the witnesses. Whether the sale to the Investment Company was the result of a transaction wholly independent of the assignment to it of the Weisendanger agreement must be determined, of course, upon the facts and circumstances of the transaction and not upon the mere bald statement of the witnesses that the two transactions had in legal effect no relation to or connection with each other. We are of the opinion, however, that there is other evidence which clearly discloses that the Weisendanger agreement had lost all its force and vitality at the time of the purported assignment thereof to the Investment Company. In other words, it is very clear, from the documentary evidence and the admitted fact of the default, that Weisendanger, when making the pretended assignment, had nothing he could assign, and that, this fact having been discovered by the company before it bought the Baker lands, the company proceeded upon its own initiative and without reference to the purported assignment to negotiate with Baker for the purchase of the property and so ultimately effected the purchase.

It will be noted that the agreement between Baker and Weisendanger provided that upon failure on the part of the

party of the second part (Weisendanger) to comply with the covenants of the agreement, "the parties of the first part shall be released from all obligation in law or equity to convey said property, and the party of the second part shall forfeit all right thereto." Therefore, when, on the fifth day of April, 1913, Weisendanger defaulted in the payment of the first installment on the purchase price as stipulated in his agreement, he thereupon and *ipso facto,* so far as the face of the agreement was concerned, forfeited the right he acquired under the agreement to purchase the property and the vendor was likewise released from any and all obligation under said agreement to convey the property to the former. The situation then in legal effect was the same as if the agreement had never had existence. His default and as a consequence the forfeiture of his agreement had taken place. *Prima facie,* his agreement had then become *functus officio* and, therefore, without obligatory force either in law or in conscience. It therefore rested with him to show, if he could do so and desired to resuscitate and perpetuate the life of the agreement, that his default should not, in equity and good conscience, operate as a forfeiture of the right to purchase the property upon the terms specified. It is not made to appear from the record before us that he made any attempt to do this. It is not shown, nor is it claimed or pretended, that he at any time after his default offered any excuse for his default or to pay the installment, or in any way attempted to make any showing, if it was within his power to do so, that upon a consideration of the facts of the transaction or the circumstances under which the default occurred by the light of appropriate equitable principles, that Baker was not, in good conscience, justified in claiming and asserting his legal right to treat the agreement as having been forfeited because of such default. As to the action brought against Weisendanger by Baker to quiet title as against the former to the lands involved in the transaction, the purpose, and indeed the only purpose, under the circumstances, that it was necessary for it to accomplish was to get rid of the cloud which otherwise might have existed upon and embarrassed the title to said lands by reason of the said agreement between Baker and Weisendanger, which stood of record in the office of the county recorder. The action was not necessary to render effectual the forfeiture of Weisendanger's right under the agreement to buy the property. As

before stated, the forfeiture was worked by the very terms themselves of the agreement, upon the failure of Weisendanger to pay the first installment when it became due and payable. And if it be the theory that the act of dismissing the action operated as a waiver of the forfeiture, we answer that such theory is wholly untenable under this record. The effect of the dismissal, which took place after the Investment Company had purchased and obtained a conveyance of the lands, said company then being the assignee of the Weisendanger agreement, to remove the effect of which upon the face of the title was the sole object of the action, was not to change the situation with respect to the said agreement from what it was and had been at all times from and after the time the forfeiture took place by Weisendanger's default in carrying out his obligations under the agreement, but, if anything at all, it was to restore the situation to precisely what it was after his default which worked the forfeiture and before the action was brought.

It follows that, since Weisendanger's agreement had lost all its force and he consequently the right to purchase the land before he made the purported assignment (and here it may be suggested that, as he was the owner of nine-tenths of the stock of the Investment Company, the attempted assignment was practically to himself), he had, so far as said agreement was concerned, nothing that he could assign. The Investment Company, in other words, acquired by virtue of the pretended assignment no interest in the property or the right to purchase it upon the terms of said agreement or under the agreement at all. It must, therefore, be held that the purchase of the property by the Investment Company was the culmination of a contract of its own making and not as an assignee of Weisendanger or by virtue of the purported assignment to it of the Weisendanger agreement, and the payments made by said company to Baker on the purchase price of the land, therefore, were not made by the former as assignee of Weisendanger. The result is that, since Weisendanger, neither by himself personally nor by "his assigns," ever paid anything on the purchase price of the lands, there is legally no ground justifying a recovery by the plaintiffs upon the notes or contracts declared upon.

It may be and probably is true that the Investment Company never would have known of the property involved in

the Weisendanger agreement or purchased it but for the knowledge thereof and of the fact that it was for sale acquired by it through the said agreement. This, however, does not help or aid the plaintiffs in any manner. They deliberately made payment for their services in negotiating the contract for the sale of the land to Weisendanger wholly contingent upon the payments by the latter ''or his assigns'' on the principal of the purchase price, and upon that proposition alone they were and are required to stand or fall.

The judgment and the order appealed from are reversed.

Buck, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 18, 1919.

Angellotti, C. J., Melvin, J., Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.