COLEMAN. *v.* EDGAR LUMBER COMPANY.

Opinion delivered October 16, 1922.

1. BROKERS—CONTINGENCY OF COMMISSION.—Where brokers were to be paid $1.20 an acre out of the purchase money received for certain lands, the payments to be made only as the several tracts were released from the lien for the purchase money, the brokers' fee or commission was contingent on collection of the purchase money.

2. BROKERS—PAYMENT OF COMMISSIONS.—As a general rule, a broker earns his compensation when he presents a purchaser ready, willing and able to buy at the price and on the terms specified, and, unless the broker warrants the financial ability of the purchaser, the vendor by accepting him takes the risk of payment and burden of collecting.

3. BROKERS—CONTINGENT COMMISSION.—Under a contract by which real estate brokers were to be paid a commission per acre out of the purchase money received for the lands sold, payments of which commission were to be made only as the several tracts were released from the purchase money lien, the brokers were not entitled to their commission where the purchasers defaulted, and the vendor foreclosed against them and procured a deficiency judgment; such judgment not constituting a release from the vendor's lien.

Appeal from Dallas Circuit Court; *Turner Butler*, Judge; affirmed.

*Reid, Gray, Burrow & McDonnell*, for appellants.

1. There was a brokerage agency created. Appellant and his associates were employed to sell the lands, or find purchasers therefor. Such was the effect, actually and legally, of the two contracts between the parties. 4 R. C. L. 315; 123 Pac. 667; 127 Iowa 526; 114 N. W. 1076; 58 N. W. (Wis.) 450; 146 N. W. (Mich.) 418; 79 Wis. 108; 89 Ark. 289.

2. The brokers' compensation was earned when the deed was made, and, although postponed, was not contingent. 4 R. C. L. 308; 309, 311; 9 Corpus Juris, 595, 596; 89 Ark. 289.

There was no express warranty of the financial ability of the purchaser in this case, and the contract letter of October 19, 1916, does not directly or by implication express a warranty or render the payment of the commission contingent upon the full payment of the purchase price. Giving it even a construction most favorable to the appellee, it merely postponed the payment. The contract is admitted, and must be construed by the court. 67 Ark. 553; 78 *Id*. 574; 112 *Id*. 165; 90 *Id*. 272.

A contract, however, will be construed most strongly against the obligor, as unfavorable as its terms will admit against the party who proposed and prepared it. 4 Ark. 199; 73 *Id*. 338. In case of doubt, a contract will be construed most strongly against the party who wrote it. 112 Ark. 1; 84 *Id*. 431; 74 *Id*. 41. See also 90 Ark. 256; 105 *Id*. 421; 114 *Id*. 415.

The law leans toward that construction of a broker's contract which will secure the payment of his commission, rather than to the contrary construction. 77 N. W. (Wis.) 152.

A promise to pay "out of the proceeds" fixes the time of payment, but does not show that the obligee is to look for his pay alone to that fund. 32 Ark. 59; 42 Ala. 9.

3. Even though the commissions were contingent, they are now due. Appellee received and accepted $84,000 and a deficiency judgment in full satisfaction of the debt. It thereby released its vendor's lien, and, under the contract, became immediately liable for the full amount of commissions. 191 Ill. 645, 61 N. E. 431; 174 Mass. 410, 54 N. E. 872; 25 Ore. 336, 35 Pac. 1066; 23 S. E. (Va.) 754; 87 Ark. 506.

If a vendor accepts and contracts with the purchaser, the latter's solvency is presumed. 82 Ill. App. 558; 29 Ind. App. 305; 64 N. E. 643; 31 Minn. 484; 18 N. W. 290; 68 N. E. 349; 44 Atl. 484; 44 S. C. 227; 22 S. E. 108.

*Gaughan & Sifford* and *Mahoney & Yocum,* for appellee.

If, as is contended by appellant, he was employed by appellee as a real estate broker to sell the lands, the law of the case is fully stated in the case of *Boysen* v. *Frink,* 80 Ark. 254.

We may admit that the principle on which the decision in that case was based, as applied here, would make the appellee liable to the appellant, if it purposely failed to collect the full purchase price of the land sold, or it might go to the full extent of requiring appellee to use reasonable diligence to collect the full purchase price. The trial court, however, found that appellee had not failed in its duty, and that finding is supported by the evidence.

The case of *Pinkerton* v. *Hudson,* 87 Ark. 506, is not in conflict in any way with the principles announced in the Boysen case, *supra.* Liability in the Pinkerton case was based entirely on two facts, (1) the financial

ability of the purchaser to pay, and (2) the refusal of the seller, without reason, to collect the purchase money. No such facts appear in this case.

Other cases cited by appellant, 61 N. E. 431, and 35 Pac. 1066, do not sustain his position. In this case there is no showing that at the time of the foreclosure sale, the property was worth any more than the bid accepted by the court, no showing that appellant filed any exception to the report of sale, or to its confirmation.

HUMPHREYS, J. Appellant instituted suit against appellee in the Dallas Circuit Court to recover $8,882.26, a balance alleged to be due him for selling a large tract of land belonging to appellee. Appellant alleged that he and his two associates, while engaged in the real estate business in Little Rock, Ark., effected a sale of 28,461 acres of land, situated in Union and Columbia counties for appellee, the owner thereof, to William and Thomas Maloney, for $5.70 an acre, for which service they were to receive a commission of $1.20 an acre in the proportion of 60 cents an acre, to appellant and 30 cents an acre to each of his associates; that he received a payment of $2,563.60 on commission, leaving a balance due him of $8,820.80.

Appellee filed an answer alleging that it had paid appellant all it owed him under the terms of the contract, and denying any additional indebtedness to him on account of the sale of the said land.

The cause was submitted to the court sitting as a jury, upon the pleadings and evidence, which resulted in a judgment for appellee. From that judgment an appeal has been duly prosecuted to this court.

The facts, revealed by the record, are in substance as follows: On July 1, 1916, appellant and his two associates, T. F. Patterson and R. A. Leavitt, real estate brokers, entered into an agreement to sell a large tract of land, estimated at 24,000 acres, in Union and Columbia counties, for appellee by Dec. 15, 1916, at $5.70 per acre, payable as follows: $4,500 cash, $5,000 on or before

June 1, 1917, $10,000 on or before Dec. 1, 1917; $10,000 on or before Dec. 1, 1918; $10,000 on or before Dec. 1, 1919, and the balance on or before Dec. 1, 1921, the unpaid purchase money to bear interest at the rate of 6 per cent. per annum from date until paid. The agreement was reduced to writing in the form of an option contract between appellee and one of appellant's associates, T. F. Patterson. The contract provided that appellee should convey the land by warranty deed to the optionee or his assignee, in case the option was exercised, upon the payment of the cash consideration and the execution of notes covering the deferred payments, which were to be secured by a vendor's lien on the land. The option contract covered the transaction in detail and is quite lengthy. Among other things it provided that appellee or grantor should be liable upon its warranty for only $4.50 per acre on that part of the land to which title might fail; also, that upon failure to pay the interest or any installment of principal when due, the vendor might declare all the deferred payments due; also that any forty-acre tract should be released from the lien for the purchase money upon payment to the vendor of $5.70 per acre thereon, in addition to any payment made on the whole purchase price, said payment to be credited on the last deferred payment of the purchase price. The option contract was signed on Oct. 18, 1916. On the next day, Oct. 19, 1916, a letter was written by appellee to appellant and his associates for the purpose of reducing the brokerage agency to writing. The previous contract and option, given to T. F. Patterson, are referred to in the letter. The letter is as follows:

.   "October 19, 1916.
"Messrs. T. F. Patterson, R. A. Leavitt, L. P. Coleman,
  "Little Rock, Arkansas:

"Gentlemen: By previous arrangement with you an option is given to Mr. T. F. Patterson whereby he has the right to purchase, subject to certain conditions and limitations, the land of the Edgar Lumber Company, es-

timated at this time to be about 24,000 acres, at the price of $5.70 per acre, to be paid for in different installments.

"As an evidence of our previous contract, we now place in writing our obligation to pay you out of the purchase money received—provided the option given is exercised by the said Patterson—$1.20 per acre for such part of said lands as are so taken under said option. The payments are to be made as the several tracts are released from the lien for purchase money, and only as they are released from the lien, until the whole purchase price is paid. At which time any amounts not paid you at the rates above, before, will be due and payable. If the said option is not exercised, we are under no obligation to pay you anything and will not pay the same, and the same will be due and payable only as hereinbefore mentioned, and we acknowledge no liability to you otherwise or under any other conditions.

"Without instructions from you to the contrary, of the amounts to be paid you as hereinbefore mentioned, 60 cents per acre will be remitted to L. P. Coleman, Little Rock, Arkansas; 30 cents per acre to T. F. Patterson, Little Rock, Arkansas; and 30 cents per acre to R. A. Leavitt, Little Rock, Arkansas, by our checks deposited in the United States mail to the addresses above mentioned.

"Yours truly,<br>"EDGAR LUMBER COMPANY,

(Signed)          "C. V. Edgar, President."

"The foregoing writing is accepted and approved as a contract between the undersigned and the Edgar Lumber Company, with reference to the matters mentioned. This October 19, 1916.

(Signed)          "R. A. LEAVITT,<br>"T. F. PATTERSON,<br>"L. P. COLEMAN."

Appellant and his associates showed the land to William and Thomas Maloney, citizens of Iowa and Nebraska, who took over the option, and in the exercise of it procured a deed conforming in every respect to the

option contract. They organized a corporation, known as the Realty & Colonization Company, and conveyed the land to it. Appellee paid appellant and his associates their commission out of the cash payment of $4,500 on the basis of $1.20 out of every $5.70 received by it from the Maloneys. Appellant sold one-third of his commission to the Realty & Colonization Company. Under the terms of the option contract and deed made to the Maloneys, the Realty & Colonization Company obtained releases to a certain number of forty-acre tracts by paying appellee $5.70 additional per acre, and, out of the money thus received, appellee paid appellant his *pro rata* share of the commissions on the basis of $1.20 out of every $5.70, his *pro rata* share being 40 cents instead of 60 cents out of every $5.70 received, because he had sold one-third of his commissions to the Realty Company, as heretofore stated. Appellant was paid a total of $2,563.60 as his *pro rata* share of commissions out of the purchase money actually received by appellee. The total number of acres sold, as shown by the survey, was 28,461. The total number of acres released under the contract was 6,490. The number not released 22,105. Default was made on the deferred payments, and appellee foreclosed its vendor's lien against the 22,105 acres not released. The land only sold for $84,000 at the foreclosure sale, less than $4.50 per acre. Appellee took a deficiency judgment against the Realty & Colonization Company, but the company had no property out of which to collect it. There was evidence tending to show that the Maloneys, the makers of the notes evidencing the deferred payments, were insolvent.

Judgment was rendered by the trial court, dismissing appellant's complaint, on the theory that his commissions were contingent on the payment of the purchase money. Appellant contends that the court erred in thus construing the contract. He insists that, under a proper construction of the contract, his compensation was earned when appellee made the deed to the Maloneys and ac-

cepted their notes for the balance of the purchase money; that the payment thereof was postponed until the purchase money was paid, or the vendor's lien was enforced against the land. The brokerage contract was evidenced by two writings, the option signed on the 18th and the letter written and accepted on the 19th of October. These instruments must be read together to ascertain the purpose and intent of the contracting parties. When construed as one instrument, it is quite apparent that the fee to the brokers was contingent upon the collection of the purchase money. The letter states that the brokers shall be paid $1.20 an acre out of the purchase money received; also that the payments (the $1.20 an acre) shall be paid as the several tracts are released from the lien for the purchase money, and only as they are released from the lien, until the whole purchase price is paid. The written option provided the method by which a release might be obtained on a part or all of the land. Payment of the full consideration of $5.70 per acre on any cut-over forty-acre tract or more was the method provided for effecting a release from the vendor's lien. The clause contained in the option, to the effect that appellee should be bound to the extent of $4.50 per acre only on its covenant of warranty, strongly indicates that it should receive that amount, in any event, out of the purchase price. Had the intention been otherwise, the covenant would have been drafted to cover the entire purchase price. The general rules of law contended for by appellant, to the effect that a broker earns his compensation when he presents a purchaser ready, willing, and able to buy at the price and upon the terms specified, and that, unless the broker warrants the financial ability of the purchaser, the vendor, by accepting him, takes the risk of payment and burden of collection, are correct. These rules have no application, however, to cases where the brokerage contract makes the payment of the commission contingent upon the payment or collection of the purchase money as in the instant case.

Appellant makes the further contention that, through the foreclosure sale and procurement of a deficiency judgment against the Realty & Colonization Company, a release of all the lands from the vendor's lien, within the meaning of the contract, was effected and the commissions were matured. We do not think so. Our interpretation of the contract is that the maturity of the commission depended on the collection of a part, or all, of the purchase money in excess of $4.50 per acre, which appellee was to receive first. Of course the duty rested upon the appellee, when default was made, to endeavor, in good faith, to collect the purchase money. It is true, the land brought less than $4.50 an acre at the foreclosure sale, but it is not shown that the price was influenced through connivance or fraud of appellee or its agents. Neither was it made to appear that the deficiency judgment was collectable, nor that the balance of the purchase money could have been collected by legal proceedings, from the Maloneys, the makers of the notes.

No error appearing, the judgment is affirmed.