HARRIS et al. v. WHEELER. (No. 2142.)*

(Court of Civil Appeals of Texas. Amarillo. May 30, 1923. Rehearing Denied Oct. 10, 1923.)

1. Brokers ⟨key⟩64(2)—Commission held due on foreclosure and bidding in by vendor.

Where broker's compensation was to be paid pro rata out of installments and the purchaser defaulted and abandoned the premises, and vendor took judgment against the purchaser and foreclosed the lien and purchased the property at receiver's sale, the broker was entitled to commission on the amount credited on the judgment against the purchaser.

2. Mines and minerals ⟨key⟩101—Petition for broker's compensation against joint owners of lease held not demurrable.

A petition, by broker, for compensation against the joint owners of an oil lease sold, held not demurrable, because it did not allege that defendants, other than the one executing the contract in his own name, either authorized or ratified the making of the contract.

3. Mines and minerals ⟨key⟩101—Joint owners of lease held liable under contract in name of one.

Joint owners of an oil lease are all liable under a contract with a broker entered into in the name of only one of them, it appearing that the joint owners intended to wind up their business in the name of the owner executing the contract.

4. Mines and minerals ⟨key⟩101—Evidence sufficient to warrant finding joint owners of lease intended to contract in name of one.

Evidence held sufficient to warrant a finding that joint owners and operators of an oil lease intended to wind up their business by contracting in the name of one of them.

5. Pleading ⟨key⟩291(2)—Liability under contract not to be raised in absence of denial of execution under oath.

Questions as to authority of one of several joint owners to bind the others by an agreement to pay commission for sale of an oil lease, and whether, if liable at all, they were jointly and severally liable in proportion to their respective interest in the lease, could not be raised where they did not deny under oath the execution by themselves or their authority of the instrument sued on as being their agreement under Rev. St. art. 1906, subd. 8 and article 3710.

6. Mines and minerals ⟨key⟩101—Joint owners of lease each bound to full performance of contract to pay broker's commission.

While as between themselves the liability of joint owners of an oil lease might be limited by the extent of their respective interest in a lease sold, they were each bound to broker under commission contract to the full performance of the contract under their joint promise, in view of Rev. St. art. 1842.

7. Brokers ⟨key⟩81—Plaintiff held to have right to sue.

In an action on a contract to pay broker's commission, there was no error in refusing to allow inquiry as to whether some other person owned an interest with the plaintiff in the contract; the contract being in plaintiff's name, and he having right to sue and recover on it.

8. Pleading ⟨key⟩333—Rule requiring amendments 24 hours before trial reasonable.

A rule of the district court requiring that all amendments to pleadings be filed at least 24 hours in advance of the time set for trial is reasonable; there being no absolute right to amend, under Rev. St. arts. 1824, 1825.

9. Appeal and error ⟨key⟩948—Burden on appellants to show abuse of discretion in refusing to permit amendments.

Where there was a rule of the trial court requiring amendments to pleadings to be filed 24 hours before time set for trial, the burden was on appellants to show an abuse of discretion on the part of the trial court in refusing to permit the filing of an amendment at the time set for trial.

Hall, C. J., dissenting.

On Motion for Rehearing.

10. Mines and minerals ⟨key⟩74—Installments all held due on abandonment of oil lease.

Though a sale of an oil lease provided for payment out of oil production, entire purchase price became due when the purchaser abandoned the lease and made it impossible for him to pay in the way provided.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 28, 1923.

Action by L. Wheeler against R. T. Harris and others. Judgment for plaintiff, and defendants appeal. Affirmed.

O. F. Wencker, of Dallas, and Fitzgerald & Hatchitt and Bonner, Bonner & Sanford, all of Wichita Falls, for appellants.

T. F. Hunter and W. L. Scott, both of Wichita Falls, for appellee.

BOYCE, J. This suit was brought by L. Wheeler against R. T. Harris and 10 others to recover a commission, alleged to be due the plaintiff as broker, on the sale of an oil lease owned by the defendants. The plaintiff alleged that it was agreed between the plaintiff and the defendants herein that for his services in effecting said sale defendants would pay to the plaintiff $25,000 as his commission in that behalf and on the 15th day of September, 1919, the said defendant, R. T. Harris. acting for himself and the other defendants herein, executed and delivered to plaintiff an agreement in writing to pay said $25,000 commission, which agreement was in the following words and figures, to wit:

"Wichita Falls, Texas, September 15, 1919.

"L. Wheeler: I agree to pay you a commission of $25,000 out of sale price of Gray Gander Oil Company, commission to be prorated as to cash payment and deferred payment; you to get your proportion of the cash payment and the balance out of deferred payments as they are made by the purchaser.

"[Signed] R. T. Harris."

The oil lease was sold and conveyance thereof executed by defendants to one Langley for a consideration of $425,000; $100,000 cash, $50,000 evidenced by note, and $275,000 to be paid out of the oil production at the rate of $1.50 per barrel. The plaintiff received his proportionate part of the commission on the $100,000 cash payment, and the suit is to recover a balance alleged to be due on account of deferred payments received by the defendants under the following circumstances: Langley, after paying the $100,000 cash payment, $50,000 note and other payments, which reduced the amount remaining due on the purchase price to about $240,000, defaulted and abandoned the property. Plaintiff received his proportionate part of the payments thus made by Langley, except that there was a balance due on this account amounting to $102.69. The defendants brought suit against Langley, who had left the state, and obtained judgment in rem, which established the balance due on the purchase price by Langley at the sum of about $240,000 and decreed the foreclosure of an equitable lien on the oil lease. On receiver's sale of this property made under order of the court, it was bid in by the defendants at $100,000 and was conveyed to them on this recited consideration. The receiver reported that the property had been sold at $100,000 cash, and the report and the judgment confirming the sale recite that such sum is the fair and reasonable value of the property, though defendants offered testimony to the effect that the property was worth only about $10,000 and that the $100,000 was bid merely for the purpose of forestalling any possible claim of sale at an inadequate consideration. The defendants, after spending considerable amounts in restoring the oil wells to production, sold the property at a price of $50,000.

This statement suggests the principal question of liability in the case, to wit, whether the plaintiff was entitled to commission pro rata on the $100,000, credited on the purchase price of the property on confirmation of the receiver's sale and conveyance of the property to the defendants. The trial court held that he was, and rendered judgment for plaintiff accordingly. Another question presented in different ways is as to the liability of the defendants other than Harris. We make this further statement as pertinent to .the decision of the various propositions concerning the latter question stated. Plaintiff's petition did not charge that the defendants were partners; the allegation being that they were the owners of the lease, which was followed by the allegation as to the execution of the contract above quoted. The defendants denied partnership under oath, but did not deny under oath the execution by themselves, or by their authority, of the instrument executed by Harris and set out above. It was shown on the trial that the defendants owned undivided interests in the oil lease. Four of them owned one twenty-fourth each; two of them one-twelfth each; three of them one-ninth each; and two of them one-sixth each. They had been operating the property in the name of the Gray Gander Oil Company; Harris and another defendant, Pennington, being the active managers of the business. In the assignment of the lease, executed by all the defendants, it was provided that the $50,000 note executed by Langley should be payable to Harris, and that the other payments should also be made direct to Harris, who was thereby authorized to collect the same, execute all division orders and instruments necessary to obtain such money. Several of the defendants were present during the negotiations for the sale of the lease and knew of the agreement to pay the commission to plaintiff. All the defendants knew of the payments that were made to Wheeler from time to time and made no objection thereto. The court found that—

"In executing this paper R. T. Harris, by custom, practice, and upon consent of said owners, operating under the name of the Gray Gander Oil Company, was acting for all of said owners and that they were acting thereby through R. T. Harris, and that same intended to and did bind all of said owners to pay said commission out of the proceeds of the sale of the property."

The court further found that the owners were acting jointly in the operation of the property and the judgment was against the defendants, jointly and severally.

[1] A decision as to the liability of the defendants for a commission on the $100,000, for which the property was sold at receiver's sale, is not free from difficulty. Our construction of the effect of the contract is that the defendants' liability for payment of commission existed only as payments were made on the sale price, and the question is whether this $100,000 is a deferred payment on the sale price made by the purchaser, within the meaning of the commission agreement. Technically, at least, we think it is. The lease was assigned to Langley, and it became his property, subject only to an equitable lien to secure the payment of the balance which he owed on the purchase price. The effect of the proceeding against Langley was to affirm the sale and to hold him to his liability for the payment of the balance of the purchase price. If this property or other property owned by Langley had been sold in satisfaction of a judgment against him, in a suit brought to recover balance due on the purchase, and bought in by some third person, at such sale, it could not be doubted that the money received at such sale would be a part of the purchase price of the lease and that plaintiff would be entitled to a proportionate payment of his commission out of the fund so realized. Why should the fact that defendants themselves bought the property make a difference? In either event Langley's obligation would be reduced by the amount for which the property was sold at such sale. Langley now owes about $140,000, balance of the purchase price of said property instead of $240,000 before the sale. He remains liable for the payment of this $140,-000. If it should be collected, plaintiff would be entitled to his proportionate part thereof. In the last-stated event, Langley's obligation would have been completely satisfied, and yet plaintiff would not have received the full amount of his commission unless he be entitled to collect commission on the amount for which the property was sold at judicial sale. In the case of Crane v. Eddy, 191 Ill. 645, 61 N. E. 431, 85 Am. St. Rep. 284, the vendor had agreed to pay the broker's commission "out of the purchase money in proportionate amounts as it is paid," and had bought in the property at foreclosure sale, bidding the full amount of the balance due on the purchase price, and it was held by the Supreme Court of Illinois that the vendor was liable to the broker for his commission on the conclusion that the purchase-money debt was paid by the transaction stated. See, also, Bush v. Abraham, 25 Or. 336, 35 Pac. 1066; White v. Murphy (Mo. App.) 236 S. W. 674. In the case of Roach v. McDonald, 187 Ala. 64, 65 South. 823, the vendor gave the broker notes for the amount of commission on a sale of land through the efforts of the broker, with the agreement "that these notes were not to become obligations of the said John T. McDonald [the vendor] until the notes of Gable [the purchaser] for the deferred purchase money were paid." The purchaser defaulted, and the land was sold under power of sale and conveyed to the original vendor, who bid the amount remaining due on the vendor's notes, and it was held by a majority of the court that the transaction did not "operate as a payment of the purchase-money notes, within the meaning of McDonald and Marsh [the broker]." The effect of the transaction was treated by the court as not being a confirmation of the sale and payment of the purchase price, but rather as a rescission thereof. Three of the judges dissented, reasoning along the same line as that followed by the Supreme Court of Illinois in Crane v. Eddy, supra. We quote the following from the dissenting opinion:

"The law gave to McDonald several remedies for the collection of the notes which were secured by the deed. He might have brought an action at law against their maker and enforced their payment—if the maker was solvent—in that way, or he might have filed a bill in equity for the enforcement of the lien which he reserved in the deed. He elected, however, to collect the indebtedness by selling the lands under the power contained in the deed, and, by doing so, has placed himself, with reference to the indebtedness which was due him, in the same position as if a stranger had appeared and bought at the sale. * * * Certainly if a stranger had appeared at the sale and bought the lands * * * McDonald could not claim that the deferred purchase money was not thereby paid, and I am unable to see how, in the attitude which, as a purchaser at the sale, McDonald has placed himself, he can be permitted to claim that the purchase money for the land has not all been paid."

It will be conceded that when the broker's commission is dependent on payment of the purchase price by the purchaser and the vendor, on default of the purchaser, rescinds the sale, the broker would not be entitled to his commission. We recently so held in the case of Riley v. Palmer (Tex. Civ. App.) 237 S. W. 326. But, as we have already said in this case, there was no rescission of the consummated sale; the defendants were proceeding to enforce the contract by collecting the unpaid purchase price. As between them and Langley they certainly have collected $100,-000 of the amount due. The legal effect of the receiver's sale was that the plaintiffs, purchasers thereat, paid the receiver $100,000 for the property; the receiver conveyed the property to the purchasers, who in this case happened to be the owners of the debt, and paid the money received at the sale to the plaintiffs in the judgment. We think the decision in the case of Crane v. Eddy, supra, and the holding of the minority of the court

in the case of Roach v. McDonald, are sustained by the better reasoning, and therefore hold that the defendants are liable to the payment of the commission on this $100,000.

[2] The first, third, and fourth propositions assert, in substance, that the plaintiff's pleadings are insufficient, because they do not allege that the defendants, other than Harris, either authorized or ratified the making of the contract, executed by Harris alone. The allegations of the petition, which are quoted in the preliminary statement, are sufficient to clearly show that plaintiff thereby charged that the contract executed by Harris, in his name, was executed as the contract of all the parties, and in our opinion is not subject to general demurrer, because it does not in terms state that Harris was authorized to execute the contract in behalf of all the defendants sought to be charged thereon.

[3, 4] It is contended under the second proposition that no one but Harris could be held liable on the written contract, because it purports to be his individual obligation, and if he were acting for others in the execution of the contract such others were disclosed principals and could not be bound thereby. There is a conflict in the authorities as to whether a principal, disclosed at the time of the making of a written contract executed in the name of the agent alone, may be held on the contract. Mechem on Agency (2d Ed.) §§ 1420, 1423, 1712, 1713; Garcia v. Yzaguirre (Tex. Com. App.) 213 S. W. 240. The courts of this state are apparently committed to the proposition that the principal cannot, as a general rule under the circumstances stated, be held. Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764; Edwards v. Roberts (Tex. Civ. App.) 222 S. W. 278; Eddleman v. Wofford (Tex. Civ. App.) 217 S. W. 221. But there are recognized qualifications of this rule. In Heffron v. Pollard, supra, the court said:

"We understand the law to be that when a party for the purpose of transacting business adopts an assumed name, whether it be fictitious or the name of another, he is bound by a contract made in that name."

It is said in the case of Caraway v. Weatherford (Tex. Civ. App.) 29 S. W. 508:

"The doctrine seems to be that, where no firm name has been adopted, a note in the name of one of the partners will bind the firm, when it is done for a firm purpose and on the credit of the firm, and such is the understanding of the parties to the transaction."

In Dockery v. Faulkner (Tex. Civ. App.) 101 S. W. 501, it is said:

"We recognize the general rule to be that when the name of one partner appears on a bill or note his copartners would not be chargeable, although the instrument was used for partnership purposes, unless the firm transacted business in his name. * * * And while prima

facie only the partner is bound who signs the instrument, it is permissible to show affirmatively that the signature was intended for the signature of the firm."

See, also, Bolan v. Wrather (Tex. Civ. App.) 239 S. W. 281. While the evidence in this case shows that the defendants, as joint owners and operators of the lease, had operated the business in the name of the Gray Gander Oil Company, we think the evidence sufficient to warrant the conclusion that they intended to wind up the business in the name of R. T. Harris. The credits were made payable to R. T. Harris, and he was authorized to act in his name in handling the further business of the defendants and the conclusion is reasonable that it was intended that the obligations incurred in respect to such business should also be executed in Harris' name.

[5, 6] The seventh, eighth, ninth, tenth, eleventh, and twelfth propositions present questions as to the authority of Harris to bind the other defendants by the agreement to pay the commission, and whether the defendants, if liable at all, are jointly and severally liable for the entire amount, or only severally liable in proportion to their respective interests in the lease. We are of the opinion that the defendants are not in position to raise these questions now, because they did not deny under oath the execution by themselves or their authority of the instrument sued on as being the agreement of the defendants. R. C. S. art. 1906, subd. 8; Id., art. 3710; Sessums v. Henry, 38 Tex. 37; I. & G. N. Ry. Co. v. Tisdale, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545; City Waterworks v. White, 61 Tex. 536. But we think the finding of the court that Harris had authority to make the contract for the payment of the commission in behalf of all the defendants is sustained by the evidence. There was nothing in the manner in which the business had been transacted to suggest that Harris could only bind each defendant by a several contract to the extent of their respective interests in the lease. While as between themselves the liability of each defendant might be limited in such way, the joint promise bound each one to the full performance of the contract. 6 R. C. L. 878, § 268; Williston on Contracts, § 316; Page on the Law of Contracts (2d Ed.) § 2066. Under our statutes any one or number of the joint obligors may be sued without the others. R. C. S. art. 1842; Miller v. Sullivan, 89 Tex. 480, 35 S. W. 362, and there is little difference in the effect of a judgment against defendants, jointly and that against defendants jointly and severally.

[7] There was no error in refusing to allow the appellants to enter into an inquiry as to whether some other person owned an interest with the plaintiff in the contract for commission. The contract being in plaintiff's name he had a right to sue and recover on

it. El Paso Town-Site Co. v. Watts (Tex. Civ. App.) 227 S. W. 709.

[8] The eighteenth and nineteenth propositions complain of the refusal of the trial court to allow defendants to file an amended answer tendered for filing at the time the case was called for trial. The case had been on file for some 15 months. It had been set down for trial for some time in advance. There was a rule in force in the district court in which this case was tried that all amendments to pleadings should be filed at least 24 hours in advance of the time set for trial thereof. The appellants made no excuse for not complying with such rule and filing the amendment sooner. We think the rule was not arbitrary, but a reasonable one, calculated to save time in the transaction of the business of the court. The appellants did not have the absolute right to amend. R. C. S. arts. 1824, 1825.

[9] "The rule laid down in the decisions * * * is not that the right of amendment exists subject to the right of the opposite party to show that the proposed pleading would surprise him, but that, in such situation, the matter is subject to the sound discretion of the court, the exercise of which may be based, not only on the fact that the pleading on its face appears to be calculated to surprise, but also on the fact that it may delay the trial and impede the speedy and orderly administration of justice and the dispatch of the business of the court." Lipscomb v. Perry, 100 Tex. 122, 96 S. W. 1069. We doubt whether the new matter alleged in the petition set up a good defense, but it is apparent that plaintiff's attorney would have been entitled to further time in which to examine the pleading, answer it, and possibly to prepare for trial upon the issues presented by such new matter. The defendants objected to the filing of the amendment, though no specific ground of objection was stated. It is evident that the filing of the pleading would have resulted in some delay and possibly a postponement of the trial. The burden was on appellants to show an abuse of discretion on the part of the trial court in the matter, and we think they have failed to do this.

We find no variance between the pleading and the evidence.

Affirmed.

HALL, C. J. I respectfully dissent. This cases involves the construction of a special contract, and the rights of the parties to it should be determined by its provisions, and not under the general law of brokerage. The general rules that a broker earns his compensation when he presents a purchaser ready, willing, and able to buy at the price and on the terms specified, and that unless the broker warrants the financial ability of the purchaser the vendor by accepting him takes the risk of payment, have no application to cases where the contract is special and makes the payment of the commission contingent on the payment or collection of the purchase money. The contract expresses, as clearly as the English language can be made to express any idea, that Wheeler is to get the balance of his compensation, being the amount sued for herein, "out of deferred payments" of the sale price. He has already received his per cent. of all of the cash payment, and this suit is to recover the balance referred to in the contract. By that writing he specially agreed that his commissions should be paid out of the purchase money; that he should have his proportionate part of the cash; and that he should be paid the balance out of the deferred payments as they were thereafter made by Langley. "Sale price," as therein, used means purchase money or purchase price. "Purchase money" means "money paid for the land or the debt created by the purchase." Austin v. Underwood, 37 Ill. 438, 87 Am. Dec. 254; Eyster v. Hatheway, 50 Ill. 521, 99 Am. Dec. 537; Kneen v. Halin, 6 Idaho, 621, 59 Pac. 14. The majority opinion affirms the judgment in Wheeler's favor for a pro rata share of a sum of money which Langley has never paid, and probably never will pay, and for which the appellants have not been able to recover a judgment. According to the above definition of purchase money, Wheeler has an interest only in the debt which Langley created and which is evidenced by the unpaid notes in the hands of the appellants. There is no ambiguity whatever in the contract, and therefore no room for construction or interpretation by the courts. Courts cannot make contracts for parties and should, when the meaning is clear, enforce them as written and in the light of the surrounding circumstances. We are not left to speculate as to what the parties meant with reference to the subject-matter of this suit. According to the writing he was to get his proportion of the cash payment which has been received. The balance of his $25,000 he is to get out of deferred payments as they are made by the purchaser. Since the parties have designated the fund out of which and the condition upon which Wheeler's balance is to be paid, and by whom it is to be paid, in my opinion he could not recover until the conditions have been complied with. He has predicated the collection of his balance upon the payment of the sale price by his proposed purchaser, and, having linked his chances of recovery with the seller's probability of collecting the purchase money, he should stand or fall accordingly. I think the majority opinion in Roach v. McDonald, 187 Ala. 64, 65 South. 823, correctly states the law applicable to the instant case. We have recently held in Riley v. Palmer (Tex. Civ. App.) 250

S. W. 762 in which the claim for commissions was based upon a special contract, making its payment contingent upon payment by the purchaser, that the broker could not recover when the purchaser defaults and with few exceptions the courts have so held, not only in Texas, but in other jurisdictions. Kollman v. Brooks (Tex. Civ. App.) 155 S. W. 1007; Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Laird v. Elliott (Tex. Civ. App.) 219 S. W. 499; Heath v. Huffhines (Tex. Civ. App.) 152 S. W. 176; Murray v. Rickard, 103 Va. 132, 48 S. E. 871; Prince v. Selby, S & L Co., 35 Cal. App. 684, 170 Pac. 1075; Edwards v. Baker, 39 Cal. App. 755, 180 Pac. 33; Murphy v. W. & W. Live Stock Co., 26 Wyo. 455, 187 Pac. 187, 189 Pac. 857; Lee v. Greenwood, A. Co., 123 Miss. 823, 86 South. 449; Weiner v. Infeld, 116 Misc. Rep. 323, 190 N. Y. Supp. 82; Baker v. Brewer's Est. (Ind. App.) 133 N. E. 397; Coleman v. Edgar Lumber Co., 155 Ark. 275, 244 S. W. 41; Pratt v. Irwin (Mo. App.) 189 S. W. 398; Seymour v. St. Luke's Hospital, 28 App. Div. 119, 50 N. Y. Supp. 989; Ash v. Oppman, 199 Ill. App. 573; Boysen v. Frink, 80 Ark. 254, 96 S. W. 1056; Van Norman v. Fitchette, 100 Minn. 145, 110 N. W. 851; Inge v. McCreery, 60 App. Div. 557, 69 N. Y. Supp. 1052.

I find myself unable to agree with the majority in holding that, when the appellants bid $100,000 at the foreclosure sale and the land was reconveyed to them, it is tantamount to the receipt by them of $100,000 of the purchase money. It is true that the lease became Langley's property when it was assigned to him, but it was subject to the equitable lien in appellants' favor for the purpose of indemnifying them in the event he defaulted in the payment of purchase money. By reason of this default they were forced to sue and recover a judgment in rem, and through that proceeding they have been reinvested with the title. They have no personal judgment against Langley. If they had, Wheeler would be entitled to his pro rata share of the proceeds of any part of such judgment which could be collected. While they have the land, land is not purchase money, and the appellee's commissions are payable out of purchase money, and not out of land; yet Wheeler has been decreed a recovery against appellants for his balance due and payable, according to his solemn contract, only out of purchase money, when none has been paid. Suppose Langley, in the beginning had paid only $10 cash and then defaulted for the remainder of the $425,000, total consideration, and left the state so that process could not have been served upon him, as it seems he has done, and the appellants had sued and by a judgment in rem a sale thereunder repossessed the property? And suppose, further, that the appellants had bought in the land by bidding the full contract price? Would there be any equity in permitting Wheeler to recover $25,000 under such circumstances? The appellants would not have been benefited by his services. On the contrary, they would have been and are mulcted in the necessary costs and expenses of the suit required to reinvest them with the title. For the same reason I think he should not be permitted to recover in this case. Wheeler undertook to procure a buyer who would pay the purchase money and hazarded the collection of his commissions upon performance by his purchaser. He has received his part of all that his purchaser paid. He has his pound of flesh and his contingent interest in the deferred payments still due from Langley.. As parties bind themselves so should they be bound. Appellants put their land into the venture. As against their land appellee put in his services as a broker, and the wording of the contract making the payment of commissions contingent on the payment of the purchase money is convincing evidence of the fact that they considered it to some extent a hazard, and intended equally to abide the issue. In any event, Wheeler should not recover more than his pro rata share of the fair market value of the land at the time of Langley's default. Since this transaction grows out of an oil lease of uncertain value, and there is no pleading or evidence to show what it is really worth, I think the judgment should be reversed and the cause remanded.

### On Motion for Rehearing.

BOYCE, J. [10] Appellants' motion for rehearing presents a proposition, not originally relied on, in substance as follows: That the purchaser Langley's obligation for the payment of the $275,000, because of the provision for its payment out of the oil production, was contingent, and not absolute; that when Langley abandoned the property there was no absolute contractual liability on his part to pay the unpaid purchase price of said property, his liability being for damages for failure to operate the lease as he agreed to do; that Harris and his associates proceeded on the wrong theory in the suit against Langley; and that whatever they realized as the result of said suit was not truly a part of the "deferred payments" on the purchase price of the property out of which plaintiff was, according to his contract, to be paid a proportionate amount. We are of the opinion that this proposition is not sound. The fault with it is in the premise that Langley's obligation to pay did not become absolute on his abandonment of the lease. The provision for payment out of the oil runs was not, under the circumstances, an absolute condition precedent to Langley's liability to pay otherwise. It fixed the time and provided the means of payment, but when Langley, by his abandonment of

the lease, made it impossible for him to pay in the way provided by the contract, he then became liable absolutely for the payment, Boesen v. Potter County (Tex. Civ. App.) 173 S. W. 462; Id. (Tex. Civ. App.) 191 S. W. 787; Id. (Tex. Com. App.) 221 S. W. 948; Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161; Busby v. Mining Co., 27 Utah, 231, 75 Pac. 725; Poirier v. Gravel, 88 Cal. 79, 25 Pac. 962; Wolf v. Marsh, 54 Cal. 228; Page on Contracts (2d Ed.) § 2100.