# Roach *v.* McDonald.

## *Assumpsit.*

(Decided May 14, 1914. Rehearing denied July 2, 1914.
65 South. 823.)

1. *Brokers; Compensation; Failure of Purchaser to Make Deferred Payment.*—Where a defendant sold certain lands reserving a vendor's lien with power of sale in case of default, and default having been made he caused the land to be sold and purchased it at the sale for the unpaid purchase money and costs and attorney's fees; and as part of the broker's commission on the sale of the land executed to the broker notes providing that they were not to become obligations until the notes given by the vendee for the purchase money had been paid, the repurchase by defendant of the land under the power of sale was not a payment of the deferred purchase money note within the meaning of the agreement with the broker. While payment in the broad sense includes money or anything else of value which the creditor accepts in satisfaction of his debt, in its restricted sense it means full satisfaction paid by money and not by exchange or compromise, or by an accord and satisfaction; hence, defendant is not liable on the note given the broker.

2. *Contract; Construction; Extrinsic Evidence.*—A contract will be construed in the light of the facts surrounding the parties when it was made, the occasion giving rise to the contract, the relation of the parties and the objects to be accomplished.

(McClellan, Somerville and de Graffenried, JJ., dissent.)

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by R. P. Roach against John T. McDonald, based on notes given for commission. Judgment for defendant and plaintiff appeals. Affirmed.

R. P. ROACH, GEORGE E. CRAWFORD, and GREGORY L. SMITH, for appellant. The purchase of the property upon which the lien existed puaid and satisfied the debt secured thereby to the extent of the purchase money.— *Harris v. Miller*, 71 Ala. 33; *Adams v. Sayre*, 76 Ala. 520; 2 Jones on Mortgages, 953. When McDonald used Marsh & Gamble's interest in the debt to purchase the

property, they had a right to look to McDonald personally for the payment of the debt so used.—*Demming v. Lee,* 174 Ala. 416; *Dacovich v. Canizas,* 152 Ala. 293. The failure of the purchaser to pay the deferred payments does not defeat the purposes of the contract so as to deprive the broker of his commissions where he has procured a person ready, willing and able to purchase on terms satisfactory to the seller.—*Hutto v. Stough,* 157 Ala. 570; *Richardson v. Olanthe M. Co.,* 167 Ala. 413; *Smith v. Sharp,* 162 Ala. 439. As to the effect of the giving of the note, see *Manser v. Sims,* 157 Ala. 170; *Penny v. Miller,* 134 Ala. 598; *Whitley v. Dunham L Co.,* 89 Ala. 498.

BESTOR & YOUNG, for appellee. No brief reached the Reporter.

PER CURIAM.—John T. McDonald, through his real estate agent, Samuel P. Marsh, made a sale of certain lands in Mobile county to Arthur M. Gable. The deed which was delivered by McDonald to Gable reserved a vendor's lien upon the property for the payment of $21,250, balance of the purchase money of the land, and provided that, if the notes which were given by Gable for the purchase money were not paid at maturity, then that McDonald should have the right to sell the land at public sale, and that the proceeds obtained for the lands at such public sale should be applied:

"First, to the costs of the sale, and the attorney's fee as provided above; second, to any and all taxes or assessments or insurance premiums that may have been paid by the parties of the first part, or for which they are liable; third, to the payment of the amount owing on said notes, whether due or not, at the time of sale: and, fourth, if there shall be a surplus then the balance to be paid over to the said party of the second part."

header line

[Roach v. McDonald.]

A part of the above deferred purchase money was paid, but the bulk of it was not, and finally McDonald, under the power of sale contained in the deed, sold the land conveyed by the deed for the purpose of collecting the balance remaining unpaid on said deferred purchase money. At the sale McDonald bought the property. The amount bid by him at the sale was $21,586.34, and, as he was the only bidder at the sale, the property was knocked off to him at that price, and under the power a deed was made to him by the auctioneer. The amount bid represented all that remained unpaid of the purchase money, and also the costs of, and the attorney's fees incurred in and about, the foreclosure under the power.

It appears that Samuel P. Marsh, the real estate agent was, under an agreement with McDonald, entitled to certain commissions for negotiating the sale. He was paid by McDonald some money on his commissions when the deed to Gable was delivered. For the balance of the commissions McDonald executed to Marsh three promissory notes with the understanding, stating the facts roughly, that these notes were not to become obligations of the said John T. McDonald until the notes of Gable for the deferred purchase money were paid.

The simple question in this case is: Did the sale of the land under the power, and the purchase by McDonald of the land at the sale, operate as a payment of the purchase money notes, within the meaning of McDonald and Marsh?

It is, of course, a familiar proposition that a contract must be construed in the light of the facts surrounding the parties when it was made, and that courts will consider the occasion which gave rise to the contract, the relation of the parties, and the objects to be accomplished.—2 Mayf. Dig. p. 757, §§ 104, 108.

In the instant case a real estate agent made a sale of a valuable piece of property, the major portion of the purchase money was to be paid in the future, and the owner reserved a vendor's lien upon the property to secure the payment of the deferred purchase money. The real estate agent evidently wanted something to show when and how his commissions were to be paid. The result was that, in the form of notes, the seller executed the papers sued upon in this case, with the understanding, expressed in writing upon the notes, that they were not to become "obligations" of the maker until the notes which had been given to him for the purchase money had been paid. The object of the seller, when he sold the land, was to get money for it. The true purpose of the sale was defeated if he failed to get the money. The seller did not make the sale with the idea that he would get a small cash payment and then be forced to take his land back. He intended to part absolutely with his land and get money for it, and when, in the agreement with the real estate agent, the seller stipulated in effect that the commissions of the real estate agent should become obligations of the seller—a debt for which the seller should be liable—when the deferred purchase-money notes were paid, the word "payment," used under the circumstances and in the manner in which it was used, meant payment in money. The true meaning of a word can only be determined by the context. The word "payment"—which ordinarily conveys the idea of a money transaction—in its restricted sense means "full satisfaction paid by money, not by exchange or compromise or an accord and satisfaction."—6 Words and Phrases, p. 5249. In its broader sense the word "payment" includes money or anything else of value which the creditor accepts in satisfaction of his debt.—6 Words and Phrases, supra.

Taking into consideration the situation of the parties, and the objects which they intended by this agreement to accomplish, we think it clear that, in this case, the word "paid," as used by them, was understood and intended by them to simply mean that the seller was to pay, in cash, to the real estate agent, his commissions, when the notes for the deferred payments were paid in cash, and only when paid in cash. It was not the intention of the seller to pay the real estate agent commissions on the deferred payments if they were not in fact paid in money, and, for that reason, the seller was forced to take his land back. In other words, we think that it was the intent of all the parties, by their contract, to declare that if the seller was, because of the failure of the buyer to complete his part of the contract of purchase by payment of the purchase-money notes in cash, forced to take his land back, then that he should not be liable to the real estate agent for the commissions which were represented by the notes sued upon in the instant case. To hold that the plaintiff would be entitled to recover on the notes in this case, in view of the fact that the defendant had to take back the property in satisfaction of the purchase money instead of collecting the purchase price in cash, would, in the opinion of the majority of the members of this court, have the effect of nullifying the proviso in the notes, which, they are of opinion, was put there for the purpose of covering this identical situation.

The above expresses the views of ANDERSON, C. J., and MAYFIELD, SAYRE, and GARDNER, JJ.

The judgment of the court below is therefore affirmed. Affirmed.

DE GRAFFENRIED, J.—(dissenting).—The above opinion was prepared by the writer for the purpose of

giving expression to the views of a majority of the members of this court as to the rules of law which should govern this case. In these views neither the writer nor MCCLELLAN and SOMERVILLE, JJ., concur. When McDonald made the notes which are sued upon in this action, he did, it is true, by a written agreement, stipulate that the notes should not "be or become obligations" of his until the said purchase money notes were paid. The preamble of that agreement, however, expressly declares that, whereas John T. McDonald and Samuel P. Marsh are jointly interested "in the sale of certain property at the head of Dauphin street, etc., made by vendor's lien deed dated, etc.," and whereas the three notes described in said deed, i. e., the purchase-money notes, represent "both the interest of said John T. McDonald and said Samuel P. Marsh in said sale and property," now therefore, this agreement witnessed that the said notes made by McDonald to Marsh shall not "be or become obligations of the said John T. Mc Donald unless and until" the purchase-money notes made to McDonald are paid, etc. In this agreement McDonald recognizes that Marsh has an interest "in said sale and property," but the effect of the above decision is to cut Marsh out of all "interest in said sale and property." The true effect of the above agreement was that, by the agreement, McDonald and Marsh fixed the interest of each in the purchase-money notes. They declared that, pro rata, Marsh was as definitely interested in the purchase-money notes as McDonald, and that the notes from McDonald to Marsh simply fixed the time when McDonald was to account to Marsh for his defined interest in the notes, viz., when the purchase-money notes had been collected by McDonald.

The law gave to McDonald several remedies for the collection of the notes which were secured by the deed.

He might have brought an action at law against their maker and enforced their payment—if the maker was solvent—in that way, or he might have filed a bill in equity for the enforcement of the lien which he reserved in the deed. He elected, however, to collect the indebtedness by selling the lands under the power contained in the deed, and, by doing so, has placed himself, with reference to the indebtedness which was due him, in the same position as if a stranger had appeared and bought at the sale.—*Perry v. Seals,* 186 Ala. 514, 65 South. 151, present term. It may be, and probably is true, that McDonald, when he appeared at the sale under the power and bid the lands in at $21,586.34, could have bid them in at a much less sum; but when he bid them in at $21,586.34 he fixed, by the bid, the amount with which the deferred purchase money had to be credited, and thereby extinguished the debt.—*Perry v. Seals, supra.* Certainly if a stranger had appeared at the sale and bought the lands for $21,586.34 McDonald could not claim that the deferred purchase money was not thereby paid, and I am unable to see how, in the attitude which, as a purchaser at the sale, McDonald has placed himself, he can be permitted to claim that the purchase money for the land has not all been paid.—*Perry v. Seals, supra.* It is probably true that it was, when the lands were sold by McDonald to Gable, the expectation of all the parties that Gable would pay the deferred purchase money in cash. He did not do so, but the purchase money has, under the facts stated in this record, been paid, and, while this conclusion might work a hardship on McDonald, nevertheless the law should be declared as it exists, and not in accordance with what the members of this court, to prevent a hardship, may wish it to be. In this case McDonald, by his purchase at the foreclosure sale, accepted the land

[Forbes v. Davis.]

as the equivalent of $21,586.34, and in doing so the debt due by Gable was paid.—22 Am. &Eng. Ency. Law, p. 517; *Perry v. Seals, supra.*

For the above reasons, the judgment of the court below should, in the opinion of McClellan, Somerville, and de Graffenried, JJ., be reversed, and a new trial awarded appellant.