(125 So. 335)

## MERCHANTS' NAT. BANK OF MOBILE v. HUBBARD. (1 Div. 572.)

Supreme Court of Alabama. Dec. 19, 1929.

Smith & Johnston, of Mobile, for appellee.

Edward W. Faith and Stevens, McCorvey, McLeod, Goode & Turner, all of Mobile, for appellant.

THOMAS, J. The suit was by beneficiary in an insurance policy against the Prudential Insurance Company.

And the original defendant, the Prudential Insurance Company, by interpleader, brought in rival claimants for the proceeds of that life insurance contract. Marsh v. Mutual Life Ins. Co., 200 Ala. 438, 76 So. 370; Fourth Nat'l Bank v. Woolfolk (Ala. Sup.) 125 So. 217.[1] And, the funds being paid into court, upon motion, the Merchants' National Bank, as the executor of the will of assured, claimed the money, and was substituted as defendant. It thereupon propounded its claim to the money deposited in court, to which plaintiff demurred, and the lower court sustained the demurrer on the theory that right and interest in and to said moneys was not shown by said claim. The claimant declined to plead further, and judgment was rendered awarding the money to the original plaintiff; and substituted defendant appealed.

■■■ A decision involves the construction of a separation agreement between the assured and his wife, the named beneficiary. It may be observed that the validity of such contracts has been recognized by this court, Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911; and that the most solemn contracts are read in the light of the surrounding circumstances in an effort to ascertain the true intent of the parties, where the same is of an ambiguous or doubtful import, and necessary to arrive at the true sense in which the parties employed the words of the writing, Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A. L. R. 1153; Russell v. Garrett, 208 Ala. 92, 93 So. 711; Fowlkes v. Clay, 205 Ala. 523, 525, 88 So. 651; Roach v. McDonald, 187 Ala. 64, 65 So. 823; McGehee v. Alexander, 104 Ala. 116, 16 So. 148.

The pertinent paragraph of the separation agreement is as follows: "It is the purpose of this contract to so provide that the said Emma Price Williams Hubbard shall, and she does hereby accept, the said annuity and cash payments and the other benefits hereby secured to her, in full and absolute payment of and in lieu of any and all rights she may have or claim to have to any property, choses in action, rights or funds that may belong to said Ashbel Hubbard or may have been provided by him in any form whatsoever, all of which she does hereby grant, bargain, sell and deliver to him, and she shall and will at any time, upon request of said Ashbel Hubbard execute whatever documents may be or become necessary or desirable for the purpose of releasing and further vesting the same in him, or his nominee, save only those things which have been herein above provided to be vested in her."

The inquiry is: Were the parties contracting as to their present properties and rights, or did they intend for their contract to embrace a mere possibility or mere hope of acquiring property in the future? 2 Fearne on Remainders, p. 23, VII.

In Clements v. Faulk & Co., 181 Ala. 222, 61 So. 264, two of several children conveyed their undivided interest, and one of the other children subsequently died intestate; and it was held that an interest in such moiety of the deceased child did not pass to the grantee under the covenants of warranty as to title in the deed preceding the death of the last indicated child. See the recent case of Powell v. Pearson (Ala. Sup.) 125 So. 39.[2] This court has attributed to a quitclaim deed the quality of a common-law release. Garrow v. Toxey, 171 Ala. 644, 651, 54 So. 556; Harrison v. Boring, 44 Tex. 255, 261; Van Rensselaer v. Kearney, 11 How. 322, 13 L. Ed. 703; United States in Hanrick v. Patrick, 119 U. S. 175, 7 S. Ct. 147, 30 L. Ed. 396.

In Cook v. Conway, 2 Cranch, C. C. 99, 6 Fed. Cas. 385, No. 3154, an assignment of all of the assignor's estate and effects in possession, or which may accrue or become due and owing, held not to assign a "mere possibility of a legacy." And that of conveyance of all personal property possessed at this date held not to extend to the proceeds of an annuity. Taylor v. Vail, 80 Vt. 152, 66 A. 820. And in Fearne on Remainders, p. 23, a chance, mere hope, or bare possibility is thus stated:

"VII. An expectancy or chance is a mere hope unfounded in any limitation, provision, trust, or legal act whatever; such as the hope which an heir apparent has of succeeding to the ancestor's estate. This is sometimes said to be a bare or mere possibility, and, at other times, less than a possibility. It is a possibility in the popular sense of the

---

[1] Ante, p. 344.

[2] Ante, p. 247.

term. But it is less than a possibility in the specific sense of the term possibility. For, it is no right at all, in contemplation of law, even by possibility; because, in the case of a mere expectancy, nothing has been done to create an obligation in any event; and where there is no obligation, there can be no right; for right and obligation are correlative terms."

See extended discussion of the authorities touching such estates contained in Powell v. Pearson: Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367.

What did the parties intend their agreement to embrace? We may look to their situation or circumstances, having regard for their ends or objects to be obtained and effected, their subsequent constructions of equivocal words or clauses. If the terms employed warrant, they may be aided by the rule ejusdem generis, which ordinarily limits the meaning of general words and things to the class or enumeration employed. 2 Words and Phrases, Second Series, p. 225; 19 C. J. p. 1255; State v. Western U. Tel. Co., 196 Ala. 570, 572, 573, 72 So. 99; Montgomery L. & P. Co. v. Avant, 202 Ala. 404, 80 So. 497, 3 A. L. R. 384: Perry v. Southern Express Co., 202 Ala. 663, 81 So. 619; McSwean v. McSwean, 204 Ala. 663, 86 So. 646; City of Montgomery v. Smith, 205 Ala. 557, 88 So. 671; authorities in State v. Goldstein, 207 Ala. 574, 93 So. 308; Central of Ga. v. State, 145 Ala. 99, 102, 40 So. 991; Prim v. State, 36 Ala. 244; Johnson v. State, 32 Ala. 583; Gilbreath v. State, 15 Ala. App. 588, 74 So. 723.

▪ The vested and present interests are comprehended in paragraph 4 of the agreement. And the words, "or may have been provided by him in any form whatsoever," are within the ejusdem generis rule; and did not embrace mere possibilities or a bare hope or expectancy.

▪ Mrs. Hubbard's interest was not more than a mere possibility, for the reasons: (1) The assured had the liberty to change the beneficiary on request and without the assent of the beneficiary named; (2) he had the policy in his possession and could surrender, cancel, or assign it, as he saw fit; (3) he could permit the same to lapse for nonpayment of premiums, etc.; and (4) in the event of the death of the beneficiary named *before* that of assured, by its express terms, the proceeds thereof were made payable to assured's estate or personal representative. The foregoing indicates that Mrs. Hubbard had no (then) present or vested interest in the proceeds of the policy.

It is insisted that the policy was the property of the beneficiary. In Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143, having the right to surrender value and that of the change of beneficiary, held the trustee in bankruptcy of the estate of assured was vested, by operation of law, with the title to the property, to the extent of its "cash surrender value," as that of the bankrupt rather than some prospective beneficiary that amounted to no more than a mere hope or possibility.

In the case of Pope v. Carter, 210 Ala. 533, 98 So. 726, the policy was payable to the estate of assured, and held property subject to his debts. His attempted change of beneficiary was after his insolvency. However, the hope in the beneficiary does not amount to a *chose in action* to such beneficiary as against the assured, that such is its effect as the property or right *of the assured* with the powers and possession over the property we have indicated. McDonald's Case, 215 Ala. 179, 110 So. 291; Id., 212 Ala. 137, 102 So. 38, 36 A. L. R. 761. In Lashley v. Lashley, 212 Ala. 255, 102 So. 229, the beneficiary named was vested under the law of that designation, and it is averred that it was for himself and a trust for others which was upheld. Such beneficiaries were not subject to change.

When the relations of the parties, and the objects to be accomplished—the nature of the subject-matter—are considered, under the surrounding circumstances, it was not intended or regarded by Mr. Hubbard that Mrs. Hubbard had released the bare expectancy of her surviving the husband and receiving the proceeds of that policy, if kept in force by the assured.

Mr. and Mrs. Hubbard were married on July 31, 1895, and lived together as husband and wife until October 1, 1918, when she sued for divorce on the grounds of adultery, which ground was sustained by the court in its decree for her relief. In the answer to the bill for divorce, Ashbel Hubbard set up that his wife claimed some right, title, or interest to the home on Government street, to the furniture, fixtures, and furnishings in said home, and that they had reached a settlement of their differences. The contract between the parties is then set out in Mr. Hubbard's answer, and has the customary preliminary paragraphs, and one is as follows: "Whereas, there is also pending between said parties, certain differences as to their ownership of the house on Government Street in the City of Mobile, in which they heretofore lived together, and in which the said Ashbel Hubbard still lives, and as to their property interests which are adjusted and agreed upon by the terms of this contract," etc. (setting out the contract).

The answer of Mr. Hubbard proceeded with the recital: "To the end, therefore, that she may no longer assert any claim to your orator's said home, or to the furniture, furnishings and contents thereof, other than the silver, linen, toilet silver and ornaments, and pianos which she is to have under the terms of this contract."

And the prayer for relief contained the following: "And your orator further prays that upon the hearing of this cause, this Honorable Court will, in the event of a decree of divorce being granted, so decree as to carry out the terms of the said contract of settlement, and that the title to the said homestead may be decreed to be vested in him in fee simple and that the said Emma Price Williams Hubbard has no right, title or interest thereon or encumbrance thereon, and that she may be forever enjoined from asserting any claim thereto," etc.

It appears that there had arisen a dispute between the husband and wife as to who owned the home and who owned the furnishings in the home; that the recitation in the contract and the prayer for relief in the bill all show that the property rights being settled were her interest in his home, furnishings, and any other interest in property belonging to him, and to which she might claim to have a present vested interest. In no words of the insurance policy mentioned—nor is it claimed that she ever asserted any right or interest in the policy, or in fact knew there was such a policy—had she more than an expectancy while assured lived. We have indicated that the policy was a matter exclusively within his control and possession, subject to his transfer, assignment, change of beneficiary, or forfeiture. There was no way that she could assert or preserve any right to the same, except that he elected to continue her as the beneficiary until his death, and kept the policy in force and she survived him.

■■ The court will look to the subject-matter, the relation of the parties to the contract, and the object to be accomplished by the contract. Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A. L. R. 1153; Russell v. Garrett, 208 Ala. 92, 93 So. 711; Roach v. McDonald, 187 Ala. 64, 65 So. 823. And, where the parties place a construction upon the contract, the court will follow it. Sadler v. Radcliff, 215 Ala. 499, 111 So. 231; Jefferson Plumbers & Mill Supply Co. v. Peebles, 195 Ala. 608, 71 So. 413.

■ When the interpretation placed upon this contract by Mr. Hubbard is taken into consideration, it is that Mrs. Hubbard's rights as beneficiary in this policy were not released. For about ten years after the agreement, Mr. Hubbard yearly paid the premium on this policy without exercising his right to change the name of the beneficiary. It may be that he desired to thus protect his first wife who had served him for so many years. His intentions to continue her as the beneficiary under this policy are shown by paragraph 4 of the codicil of Ashbel Hubbard's will. It is there indicated that he had taken out additional insurance amounting to $69,000, payable to his second wife in the event she survived him. Had Mr. Hubbard intended to deprive his first wife of the benefits of his insurance policy, instead of taking out the additional insurance payable to his second wife, he would have had the second wife named as beneficiary in the policy now in question. The fact that he did not do this, and continued in force, for about ten years, the policy payable to his first wife, and took out a large amount of additional insurance payable to his second wife, is an indication that he did not have in mind at the time the contract was made with his first wife, the policy of insurance payable to her or a change in the declared terms thereof, and that it was not his intention to deprive Mrs. Emma P. W. Hubbard of her expectancy as the primary beneficiary in this insurance policy; that is, at least once a year, for nine years, he paid the premium and continued in force the unchanged policy for the benefit of the first wife.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

