186 So. 133

**AMERICAN MUT. LIABILITY INS. CO. OF BOSTON v. TUSCALOOSA VENEER CO. et al.**

**6 Div. 371.**

Supreme Court of Alabama.

Jan. 12, 1939.

Rehearing Denied Feb. 9, 1939.

London & Yancey and Frederick Koenig, Jr., all of Birmingham, for appellant.

B. F. Smith, of Birmingham, for appellees.

BROWN, Justice.

General assumpsit on account and for money paid by plaintiffs to defendant's use, and special assumpsit for breach of the conditions of a policy of insurance, wherein the defendant, for a consideration, engaged to indemnify and hold the plaintiffs harmless against liability to their employees under the Workmen's Compensation Act, Code 1923, § 7534 et seq.

■ Counts in special assumpsit added by amendment, aver inter alia: "That on to-wit: the 3rd day of May, 1935, when said policy was in full force and effect, plaintiffs, *having performed all the duties and obligations concerning said policy incumbent on them to perform,* an employee of plaintiffs' to-wit: Claude Martin, received an injury in the line and scope of his employment with plaintiffs, arising out of his employment, while in the service of plaintiffs in their business *covered by the policy constituting a liability under the policy.*" [Italics supplied.] The obligations and duties imposed by the policy on plaintiffs and its coverage are not otherwise stated than as above indicated. The italicized averments are purely pleader's conclusion. The demurrer, by specific grounds pointed out these defects. Code 1923, § 9479. The Circuit Court, therefore, erred in overruling the demurrer. Powell v. Life & Casualty Ins. Co. of Tennessee, 184 So. 899;[1] Worthington v. Davis, Director General of Railroads, 208 Ala. 600, 94 So. 806; Birmingham Ry., Light & Power Co. v. Littleton, 201 Ala. 141, 77 So. 565; Thomas v. Irvine, 171 Ala. 332, 55 So. 109.

The question of controlling importance, and the one upon which the result of this litigation must be determined, is whether or not the policy covers "Woods operation," the work in which the employee Martin was engaged at the time of his injury, the place of his work being located some ten miles or more from the plaintiffs' place of operation disclosed in the "Declaration" attached to and made a part of the policy and limiting its coverage.

The policy is what is known as the "Standard Workmen's Compensation and Employer's Liability Policy" issued on the 17th of December, 1934, in which it is stipulated that the Insurer "Does hereby agree, with this employer, named and described as such, in the *declarations, forming a part hereof,* as respects personal injuries sustained by employees, including death at any time resulting therefrom as follows:

"'I (a) To pay promptly to any person entitled thereto, under the workmen's compensation law, and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due.

[1] Ante, p. 19.

\* \* \* \* \* \* \* \* \*          \* \* . \* \* \* \* \* \* \*

"I (b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada.

\* \* \* \* \* \* \* \* \*

"III To defend, in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations, or demands are wholly groundless, false, or fraudulent.

\* \* \* \* \* \* \* \* \*

"This Agreement is Subject to the Following Conditions:

"Basis of Premium

"A. The premium is based upon the entire remuneration earned, during the policy period, by all employees of this employer engaged in the business operations described in said declarations together *with all operations necessary, incident or appurtenant thereto or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto.* \* \* \* If any operations as above defined are undertaken by this employer but are not described or rated in said declaration, this employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with condition C hereof, at the rates, and in compliance with the rules, of the manual of rates in use by the Company upon the date of issue of this policy. At the end of the policy period the actual amount of the remuneration earned by employees during such period shall be exhibited to the Company, as provided in condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the Company, if less, the Company shall return to this employer the unearned portion, but in any event the Company shall retain the minimum premium stated in said declarations.

"C. The Company shall be permitted, at all reasonable times during the policy period, to inspect the plants, works, machinery and appliances covered by this policy, and to examine this employer's books at any time during the policy period, and any extension thereof, and within one year after its final expiration, so far as they relate to the remuneration earned by any employees of this employer while this policy. was in force." [Italics supplied.]

In the *"Declarations"* are the following limitations of coverage:

"Item · 3. Locations of all factories, shops, yards, buildings, premises, or other work places of this Employer, by Town or City, with Street and Number Tuscaloosa, Tuscaloosa County, Alabama, *near Southern Railway Station.* \* \* \* Minimum Premium for this Policy shall be $87.00 Estimated Advance Premium [Deposit] $169.37.

\* \* \* \* \* \* \* \*· \*

"Item 5. .This employer is conducting no other business operations at this or any other location not herein disclosed—*except as herein stated. No Exceptions."* [Italics supplied.]

It is familiar law, as well as human experience, that: " 'The parties speak in their contract from the fountain of their mutual knowledge, and if we would properly interpret their words we must put ourselves exactly in their position, and know just what they mutually know, with neither addition nor abatement.' Bish. Cont. § 370. It is only by the aid of parol evidence that courts can be certain what were the circumstances under which a contract was made, what was the relation of the parties, and what was within their mutual knowledge." McGhee et al. v. Alexander et al., 104 Ala. 116, 121, 16 So. 148, 149.

The stipulations of the contract, especially those italicized in the paragraph dealing with "Basis of Premium" and coverage, towit: "With all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto;" are not so clear and unambiguous as to preclude the application of this rule. Merchants' Nat. Bank of Mobile v. Hubbard, 220 Ala. 372, 125 So. 335; Nunnally Co. v. Bromberg & Co., 217 Ala. 180, 115

190

So. 230; Kirkland v. O'Kelly, 218 Ala. 68, 117 So. 420; Scheuer v. Britt, 218 Ala. 270, 272, 118 So. 658; Pizitz-Smolian Co-operative Stores v. Randolph et al., 221 Ala. 458, 129 So. 26.

As the cases dealing with this contract clearly demonstrated, the stated rule is especially applicable in view of the elasticity of the contract's provisions with reference to coverage and the adjustment of premiums. Wingen v. Fleischman et als., 252 N. Y. 114, 169 N.E. 108; Hall v. Crystal Lake Ice Co., Vt., 199 A. 252.

The evidence is without dispute that prior to the issuance of the policy the plaintiffs had engaged in the saw mill business at Moundville, Hale County, and in "woods operation" in connection therewith; that they had carried insurance covering such business and were familiar with the premiums paid for such coverage and the basis of computation.

At the time the policy in suit was issued plaintiffs were not engaged in "woods operation," in connection with their veneering plant in Tuscaloosa.

Mr. O. E. Howell, the member of plaintiffs' partnership who procured the issuance of the policy, testified: "When I took out the policy in Tuscaloosa I thought I was familiar with the ordinary compensation policy for a business. At the time I took out the policy that is sued on in this case I did not ask for a policy to cover woods operations. I did not pay an initial premium for woods operation coverage. I was not asked whether or not I wanted a policy covering woods operation because I didn't need it. I didn't need it at the time. After this accident, after this man was injured, I don't remember being asked by a representative of the insurance company whether or not I wanted a rider put on my policy covering woods operations. I wouldn't say positively that I was or was not asked that.

"I believe that it is a fact that I was told that the premium for woods operation was a minimum premium, however, based on the amount of the compensation of the employees, the minimum premium of $250.00 for woods operation coverage. At the time I was told that the minimum woods coverage was $250.00 I did not tell him that I would not pay that premium and didn't want woods operation coverage. I did not tell him that I wanted woods operation coverage and would pay the premium; I didn't tell him anything."

It further appears without dispute that Martin's remuneration for work in "woods operation" was not included in the total actual remuneration upon which the premium for the policy was computed and adjusted.

Also, that the minimum premium for woods operation, in December, 1935, required by the State Insurance Department and the manual of rates in use by the company upon the date of issuance was $250, was not paid.

When the contract is read in the light of the mutual knowledge of the contracting parties it is clear that it was not within the contemplation of the parties to embrace woods operation within the coverage by the terms "all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto."

This interpretation of the policy contract is supported by the holding of the Court of Appeals of the State of New York, in the matter of the claim of Christopher E. Pettit v. Anna R. Reges et al., 242 N.Y. 272, 151 N.E. 450.

The holding in that case has been repeatedly followed. See Miller Bros. Construction Co. v. Maryland Casualty Co., 113 Conn. 504, 155 A. 709, 713; Szabo v. Standard Commercial Body Corp. et al., 221 App.Div. 722, 225 N.Y.S. 332, 334; Powers v. Scully; 225 App.Div. 714, 231 N. Y.S. 860; Freedman v. Northwestern Casualty & Security Co., 133 Misc. 713, 233 N. Y.S. 330, 331; McMahon v. Gretzula, 227 App.Div. 256, 237 N.Y.S. 344, 347; Ezeckel v. Saperstein, 231 App.Div. 771, 245 N.Y. S. 911; Wedemeier v. Mavis Bottling Co., 234 App.Div. 514, 255 N.Y.S. 705, 707; Nieder v. Coal Merchants' Mutual Insurance Co., 238 App.Div. 885, 262 N.Y.S. 1012, 1013; Broderick v. Cox, 163 Misc. 283, 297 N.Y.S. 875; Neubeck v. Doscher et al., 204 App.Div. 617, 199 N.Y.S. 203, 206.

The facts that "The claimant's entire remuneration was included in the total actual remuneration upon which the premium for the policy was computed and adjusted" in Wingen v. Fleischman et al., supra, 169 N.E. 109, differentiates that case from the case at bar. So, also, the commissioners finding in Hall v. Crystal Lake Ice Co. et al., supra, 199 A. 254, "to the effect that the work at Colchester had

become an established mode of operation in the business of the company and was appurtenant or incidental thereto;" and that "the claimant, whilst working at Colchester, was paid by and remained under the exclusive control and direction of the superintendent of the Crystal Lake Ice Company," given the force and effect of a jury verdict, differentiates that case from the case in hand.

Here Martin, working on the basis of so much per thousand feet of logs cut, employed his own help and superintended his own operations.

The judgment here is that the defendant and not the plaintiff was due the affirmative charge, and that the court erred in refusing such charge to defendant and in giving the same for plaintiff.

For the errors noted, the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.

