134 So.2d 421

**GADSDEN BRICK COMPANY**

**v.**

**Raymond CRANFORD et al.**

**7 Div. 471.**

Supreme Court of Alabama.

Nov. 2, 1961.

Copeland & Copeland, McCord & Martin and Ollie Nabors, Gadsden, for appellant.

E. K. Hanby, Jr., and Dortch, Allen & Meighan, Gadsden, for appellees.

COLEMAN, Justice.

This is an appeal by complainant, a corporation, from a final decree denying relief and dismissing the bill of complaint in a suit to compel specific performance of a contract whereby complainant agreed to sell, and respondents agreed to purchase, a certain brick manufacturing plant, including all the real and personal property owned by complainant, less certain items

of personal property which are specifically excepted.

In the bill of complaint, it is averred that on February 12, 1952, complainant, as party of the first part, and respondents, as parties of the second part entered into a written agreement which provided that:

Before this sale shall be consummated, complainant shall pay all debts owed by complainant; that complainant shall forthwith furnish to respondents a true statement of all debts due and to become due against complainant; that ad valorem taxes and insurance for 1952 be prorated as of the closing date of the transaction; "* * * that the conveyance of the property, as above described, shall be made free and clear of any and all liens, judgments, accounts, taxes, liabilities due or to become due and any and all encumbrances whatsoever"; that complainant agrees to furnish to respondents "* * * an abstract of title, brought up to date * * * on all the real estate owned by the corporation and on which the business of the corporation is carried on showing good and *merchatable* title in the corporation. * * to furnish all the necessary evidence and requirements * * * showing the right of the * * * (complainant) * * * to sell the property herein described * * * and sufficient evidence, as may be required, of the fact that said property is conveyed free and clear of any and all encumbrances whatsoever"; that the price shall be $70,-000, of which $25,000 shall be paid on closing and the balance of $45,000 evidenced by notes secured by mortgage on the real estate conveyed, to bear interest at 6% per annum, and payable in installments running over a period of ten years; that respondents agree to place in escrow the sum of $2,500, to be evidenced by $1,500 in cash and a check for $1,000 "* * * post-dated to ninety days (90) after the execution of this instrument * * *"; that said sum of $2,500 be applied on closing as part of the down payment of $25,000; that "* * * abstract of title, satisfactory evidence of the right to convey, proof of payment of all debts, etc. * * *," shall be furnished to respondents within 90 days from the date of the contract, and that respondents shall have a reasonable time within which to approve the same; that should complainant fail or refuse to furnish the same within said 90 days, or should "* * * the evidence and instruments so furnished fail to show good and merchantable title in the Seller or its right to convey under the terms hereof * * *," then the parties direct the escrow agent to refund to respondents the money and check so placed in escrow; that should the aforesaid evidence be presented to respondents within 90 days "* * * all showing good and merchantable title in the * * * (complainant) * * * and its right to convey free and clear of all encumbrances * * *." and should respondents fail or refuse within a reasonable time to close the transaction and pay the agreed purchase price, then the sum held in escrow shall be paid to complainant as liquidated damages.

The sale was not closed as provided in the February agreement and the parties made a further agreement in writing dated November 13, 1952. The November agreement recites that whereas the parties made the February agreement which is considered a part of the November agreement insofar as the February agreement does not conflict with the later one; and whereas respondents, in compliance with the February agreement, did deposit $1,500 in cash and post-dated check for $1,000 with the escrow agent; and whereas, on examination of the title to the real estate to be conveyed, attorneys for respondents concluded that "* * * said title is not a good and merchantable title, free and clear of all encumbrances * * *," and that curative work must be performed by complainant in order to clear the title, which work in opinion of attorney for complainant can be done within a period of from three to five months; and whereas complainant has determined that it is indebted in the amount of approximately $65,000, and that certain of its creditors have agreed to forego action

to collect until five months from the date of the November agreement and complainant has agreed to pay all other creditors; and whereas respondents are willing to enter into possession of the property and operate the plant for their own profit or loss and to place in escrow $500 in cash and two demand notes in the total amount of $24,500, which notes are payable, respectively, one to each of the two respondents; and whereas, " * * * the period of such escrow agreement is hereby limited to five (5) months from the date of this instrument and shall terminate on said date or at an earlier date and at such time as * * * (complainant) * * * shall cure the title to said property and present to * * * (respondents) * * * a good and merchantable title to the aforesaid real property free and clear of all encumbrances whatsoever and upon proof of payment of all claims and debts against * * * (complainant) * * * and further upon furnishing to * * * (respondents) * * * a satisfactory cash or surety bond indemnifying * * * (respondents) * * * from any claims, debts, demands, judgments" etc., which might exist or arise in the future in favor of any third party against the property sold; and "Should, however, the party of the first part fail, within such five month period, aforesaid, to clear said title and perform the other stipulations *hereinablve* provided, then and in such event the escrow agents aforesaid, are hereby authorized and directed to return said notes and cash aforesaid and re-transfer same to the parties of the second part"; that in consideration of the premises, mutual promises, and $1, the parties agree as follows:

1. Complainant agrees to pay all creditors except those who agree to forego collection for five months; to place $5,400 in the hands of designated agents to pay the claims other than those so extended; and to deliver possession immediately of all property and plant to respondents;

2. That the escrow agent be directed to refund to respondents the $1,500 cash and post-dated check for $1,000 previously delivered by respondents to the escrow agent;

3. That respondents agree to place with designated agents $500 in cash together with the said two notes aggregating $24,500, with proper assignment of said notes; that the period of said escrow agreement is limited to five months " * * * from the date of this instrument and shall terminate on said date or at an earlier date * * *" as aforesaid; and "The party of the first part agrees that should the sale of the property aforementioned not be consum(m)ated within the five months period herein stipulated, then and in such event, it will reimburse the parties of the second part for all monies expended in improving the buildings and property of the Gadsden Brick Company, Inc. Reimbursement of such money to be made immediately upon the expiration of the five months period or upon the termination of any extended period which might be mutually agreed to between the parties. *Shoudl,* however, the party of the first part fail, within such five months period, aforesaid, to clear said title and perform the other stipulations hereinabove provided, then and in such event, the escrow agents aforesaid are hereby authorized and directed to return said notes aforesaid and retransfer same to the parties of the second part, and said escrow agents to act under the terms of this agreement but without any liability except for willful default."

After averring in the amended bill that the parties had agreed in writing as aforesaid, complainant averred that it had placed respondents in possession; that respondents continued in possession until April 13, 1953, and operated the plant for their own profit; that complainant was on April 13, 1953, and at all times since, ready, willing, and able to perform its obligations under the agreement and has tendered performance to respondents who have failed and refused to perform; and that respondents have abandoned possession and informed complainant that

respondents do not intend to perform. Complainant offers to do equity and prays that respondents be compelled to perform. The bill of complaint was filed June 5, 1953.

Respondents denied that complainant was in position to deliver good and merchantable title to all of the real estate and averred that, prior to and on April 13, 1953, the mineral interest in a large portion thereof was outstanding, that the United States still had an interest in a portion thereof, that other encumbrances had not been cleared, and that as the time for delivery of title had expired respondents terminated the contract and delivered back possession to complainant. The answer was made a cross bill and prayed that if the bill be not dismissed, then that the court will enter a decree reforming the contract and declaring that the same requires complainant to furnish good and merchantable title to all the real estate, including minerals, and for complainant's failure so to do respondents pray for judgment.

In answer to the cross bill, complainant denied the allegations thereof and averred that there was not at any time an agreement that complainant would furnish good and merchantable title to the real estate but that complainant only agreed to convey such title " * * * as existed in the plaintiff corporation, free and clear of liens, mortgages, debts or charges against the property done or suffered against said property by the plaintiff corporation out of the operation of said business * * *," and to that end complainant undertook to pay off the charges against said property with the understanding that all liens and charges not previously paid by complainant would be paid out of the $25,000 down payment; that respondents, " * * * prior to the ownership of said property by the present officers, stockholders and owners of * * *" complainant corporation, owned said company; that respondents' knowledge of the title to the real estate was as full and complete as that of the present officers, stockholders, and owners of complainant; that respondents relied on their said knowledge in entering

into said contract; and that complainant, having entered into said contract " * * * with knowledge, actual or constructive, of the actual title to the property owned by * * *" complainant, cannot now seek reformation of the contract.

The decree appealed from denied relief to complainant; declared that complainant was not entitled to the $500 in cash or the two notes aggregating $24,500 held in escrow; that title thereto was in respondents and that they were entitled to have the cash and notes returned to them; that reformation of the contract was not necessary; and dismissed the bill with costs taxed against complainant.

Testimony was taken before commissioners and not ore tenus before the court. We have reviewed the same de novo and without presumption according to the rule of review in such cases. McCullough v. McCullough, 247 Ala. 286, 24 So.2d 123.

Complainant contends that it is entitled to specific performance and that the court erred in finding to the contrary. We do not understand that complainant insists that it was able to deliver a good and merchantable title to all the land, free and clear from all liens and encumbrances, either on April 13, 1953, which was the day for performance set by the November agreement, or on the day this suit was commenced. As it appears to us complainant argues, first, that it was not obligated to deliver a good and merchantable title, and second, that if it was required to deliver such title, it had sufficiently fulfilled its obligation in that the sale was in gross and quantity was not of the essence of the contract, according to the doctrine under which relief on the cross bill was denied in Cobb v. Morton, 252 Ala. 598, 42 So.2d 450, and similar holdings.

While we are not to be understood as holding that the terms of the written agreements could be varied by parol evidence, we do note that Hoyt Lee, who was president of and acted for the complainant corpora-

tion throughout the whole transaction, testified as follows:

"Q. In other words you wanted a transfer of the title in whatever way he wanted it? A. That's right, I had no desire to push the title of the brick company on him.

\* \* \* \* \* \*

"Q. Did you at any time discuss with them the type of title or ownership which you would *transer fro* that particular real property? A. No, sir."

■ The evidence leads us to the conclusion that the agreement as to the kind of title required is the agreement set out in the two written instruments, and that the title so specified was "a good and merchantable title free and clear of all encumbrances." ■ Moreover, by executing the November contract, the parties themselves showed their own construction of the contract with reference to the nature of title required. The November contract states that the attorneys for respondents have concluded that the title to the real estate "is not a good and merchantable title free and clear of all encumbrances," and that to allow for performance of curative work a period of five months is provided for. Complainant's execution of the supplemental agreement in November shows that complainant understood that a good and merchantable title free and clear of all encumbrances was intended. "Where the parties to a contract have given it a particular construction, such construction would generally be adopted by the court in giving effect to its provisions, and the subsequent acts of the parties, showing the construction they had put upon the agreement themselves, are to be looked to by the court and in some cases may be controlling." 9 Cyc. 588, quoted in Jefferson Plumbers & Mill Supply Company v. Peebles, 195 Ala. 608, 612, 71 So. 413, 414; Brooks v. Bank of Wetumpka, 210 Ala. 689, 98 So. 907; Sadler v. Radcliff, 215 Ala. 499, 111 So. 231; Merchants' National Bank of Mobile v. Hubbard, 220 Ala. 372,

125 So. 335. We are of opinion that the parties contracted for a good and merchantable title free and clear of all encumbrances, and not merely for such title as complainant possessed.

The land owned by complainant is not particularly described in the contract. Hoyt Lee testified that he did not "exactly know how many acres the plant owned, about two hundred acres." Complainant introduced a map showing the location of the brick plant on SW ¼ of Sec. 23, T 11 S, R 6 E, of Huntsville Meridian in Etowah County, and also an Interim Title Insurance Binder covering: W ½ of SW ¼, NE ¼ of SW ¼, NW ¼ of SE ¼, and all S ½ of NW ¼ which lies S and E of cliff at top of Lookout Mountain, all in said Section 23. The abstracts of title introduced by respondents purport to cover the land described in the insurance binder. We thus conclude that the land involved in the sale contains about 200 acres described as in the insurance binder.

It appears that when the February contract of sale was executed and at all times thereafter to the date of submission, title to an undivided one-third of W ½ of SW ¼ and S ½ of NW ¼ of Section 23 was not owned by complainant. In February, 1952, this one-third was owned by the United States. Part of the curative work contemplated in the November agreement appears to have been the acquisition of title to this outstanding one-third interest. On April 13, 1953, title thereto had not been acquired by complainant, and, so far as the evidence shows, has never been acquired by complainant. The record contains a patent dated September 11, 1953, whereby the title of the United States to the undivided one-third was conveyed to "Etowah Abstract Company, Inc., Trustee." We note that the patent is dated three months later than the date of commencing this suit, i. e., June 5, 1953.

We understand that the title of complainant is further encumbered by the reserva-

tion in a deed, conveying S ½ of NW ¼, from one of complainant's predecessors, The Alabama State Land Company, of "All the Iron Ore, Coal, Oil, Petroleum, Gas, Limestone and other minerals contained in or upon said lands, and also" a right of way and the right to build railways, pipe lines, etc., for transportation of minerals. We understand that complainant has not acquired the minerals or rights so reserved.

We think it is clear that on April 13, 1953, complainant did not have and could not convey a good and merchantable title to something more than one-half of the land here involved, free and clear of all encumbrances. Neither did complainant have such title when suit was filed.

It is said in Cox v. Collins, 205 Ala. 491, 88 So. 440, that if a contract is for the sale of a specific parcel of land for a gross sum, a mutual mistake as to quantity, but not as to the boundaries, will not entitle the purchaser to compensation and will not be a ground for rescission. We do not think that rule applies here. Where a purchaser contracts for a specific parcel of land, and gets the specific parcel agreed upon, he has no cause to complain because he has received that which he bargained for, although it is less in area than the parties had supposed. In the instant case, the purchasers have not been tendered that for which they bargained. No question of a shortage in area is involved. The respondents bargained for a complete title. Complainant did not and could not deliver such title to more than half of the acreage.

Complainant cites 81 A.L.R. 895 and argues that it is entitled to application of the rule there stated as follows:

"A court of equity, in granting specific performance, looks at the substance, and not merely the letter, of the contract. Accordingly, where a vendor seeks the specific performance of a contract which he is in a position substantially to perform by conveying substantially the quantity of land described therein, a decree for specific performance will be entered with compensation for any small and immaterial deficiency." 81 A.L.R. 901.

In 57 A.L.R. at page 1508, may be found a statement to the effect that where the part of the land to which title is defective is small or inconsiderable in comparison with the whole and does not affect the value and reasonable enjoyment of the remainder, and the deficiency is susceptible of compensation, the vendee will not be permitted to rescind but will be required to perform upon a ratable abatement of the purchase price.

Without determining the correctness of such a rule, we think it sufficient to say that we are of opinion that the deficiency here is not small or inconsiderable, and the rule does not apply.

Complainant argues that by furnishing the title insurance binder it furnished good and merchantable title. The contract does not stipulate for title insurance, but it is not necessary to decide whether furnishing the binder was sufficient performance of the contract by complainant for the reason that the binder itself is made subject to The Alabama State Land Company rights reserved as hereinabove mentioned. The binder also is subject to satisfaction of numerous liens. The title insurance binder did not guarantee a title that would fulfill the contract.

We are of opinion that complainant has failed to fulfill its obligation to furnish a good and merchantable title free and clear from all encumbrances.

The contract further provided that complainant would pay all debts which it owed. As we understand the testimony of Hoyt Lee, the following debts were not paid on the date when his testimony was taken, to wit:

Alabama Power Company      $ 1,119.52
Builder's Publishers      110.00

| | |
|---|---:|
| Jim Crumps Fan and service | 144.11 |
| Alabama Sales Tax Department | 747.30 |
| Alabama Income Tax | 289.31 |
| Alabama Department of Industrial Relations | 6,487.74 |
| U. S. Treasury Department | 6,108.56 |
| Attalla Bank | 10,300.00 |
| Birmingham News Age-Herald | 30.00 |
| E. Lee Whatlet, Foreman | 12.60 |
| Total | $25,349.14 |

In addition complainant also owed the following debts:

| | |
|---|---:|
| R. H. Forman | $ 5,000.00 |
| Hoyt Lee | 19,993.68 |
| Robert H. Forman | 1,576.00 |
| C. B. Forman | 10,000.00 |
| Total | $36,569.68 |

It may be that the debts aggregating $36,-569.68 were owed to persons who were stockholders of complainant.

Thus, it appears that complainant owed $61,918.82 or more when suit was filed. It is apparent that the $25,000 down payment, which consisted chiefly of the demand notes, even if treated as cash, would not be sufficient to pay all the debts owed by complainant to parties who were not stockholders of or interested in the corporation. The $36,000 was owed to people who were not parties to the suit and it is not made to appear how those debts could be satisfied. We are of the opinion that complainant failed to show performance of its obligation to pay all of the debts.

Because of failure to perform its obligations under the contract complainant was not entitled to require specific performance by the respondents and the decree appealed from, which so decided, is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.